1  CALDWELL LESLIE & PROCTOR, PC
   ROBYN C. CROWTHER, State Bar No. 193840
2    crowther@caldwell-leslie.com
   CRAIG H. BESSENGER, State Bar No. 245787
3    bessenger@caldwell-leslie.com
   CAMERON J. JOHNSON, State Bar No. 266729
4    johnson@cladwell-leslie.com
   725 South Figueroa Street, 31st Floor
5  Los Angeles, California 90017-5524
   Telephone: (213) 629-9040
6  Facsimile: (213) 629-9022

7  Attorneys for EVOX Productions, LLC

8

9              UNITED STATES DISTRICT COURT

10      CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

11

12  EVOX PRODUCTIONS LLC, a              Case No. CV15-05053-PSG (AGR)
    Delaware limited liability company,
13                                       **PLAINTIFF AND COUNTER-**
              Plaintiff,                 **DEFENDANT EVOX**
14                                       **PRODUCTIONS, LLC'S**
         v.                              **OPPOSITION TO DEFENDANT**
15                                       **AND COUNTERCLAIMANT**
    KAYAK SOFTWARE                       **KAYAK SOFTWARE**
16  CORPORATION, a Delaware              **CORPORATION'S MOTION FOR**
    corporation; and DOES 1-10,          **SUMMARY JUDGMENT**
17
              Defendants.                **[REDACTED]**
18  _____
                                         The Honorable Philip S. Gutierrez
19  KAYAK SOFTWARE
    CORPORATION, a Delaware              Date:     January 9, 2017
20  corporation,                         Time:     1:30 p.m.
                                         Crtrm.:   6A
21            Counterclaimant,

22       v.                              Trial Date:        January 31, 2017

23  EVOX PRODUCTIONS LLC, a
    Delaware limited liability company,
24
              Counterdefendant.
25  _____

26

27

28

CALDWELL
LESLIE &
PROCTOR

1

# **TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................................ 1

II.   DISPUTED ISSUES OF FACT PRECLUDE SUMMARY
      JUDGMENT ....................................................................................... 1

III.  KAYAK'S MOTION SHOULD BE DENIED .................................... 2

      A.    There is at Least a Triable Issue as to Whether KAYAK's Use of
            EVOX's Photographs Exceeded the Scope of the License ............ 2

            1.    The Parties' Agreement Established the Scope of the
                  License for KAYAK's Use of EVOX's Copyrighted
                  Photographs .......................................................................... 2

                  (a)   The Scope of the License in the Agreement Is
                        Clearly and Unambiguously Defined as Use on a
                        Website ..................................................................... 3

                  (b)   KAYAK Admits to Using EVOX's Copyrighted
                        Photographs On its Mobile Applications ................. 3

            2.    Under Federal Law, the Agreement Must Be Interpreted
                  So As to Protect EVOX's Rights As the Copyright Owner ........ 4

            3.    Under California Law, the Agreement Is Not Ambiguous ........ 5

                  (a)   The Agreement is not reasonably susceptible to
                        KAYAK's proffered interpretation ......................... 5

                        (i)    KAYAK's proffered meaning of "Portal" is
                               not supported by its own extrinsic definition ........... 6

                        (ii)   KAYAK never told EVOX that it intended to
                               use the Photographs on its mobile
                               applications ................................................. 7

                        (iii)  Evidence of KAYAK's Subjective,
                               Unexpressed Intent Is Immaterial ................ 8

                        (iv)   The Remainder of KAYAK's Extrinsic
                               Evidence is Immaterial ................................ 9

            4.    Even If the Agreement Were Ambiguous, Which It is Not,
                  Summary Judgment Would Be Inappropriate ......................... 10

            5.    There Is No Basis For Rescission or Reformation .................. 10

      B.    EVOX's Photographs Are Copyrightable ................................... 11

            1.    EVOX's Photographs Easily Surpass the Originality
                  Threshold Required for Copyright Protection ...................... 12

(a)     EVOX Made Creative Decisions In Producing Its
                 Photographs, Resulting In Protectable Expression .......... 13

         (b)     KAYAK Mistakes "Originality" for "Novelty" and
                 Otherwise Misapplies Copyright Law ............................ 15

     2.     KAYAK's Remaining Authority Is Inapposite ......................... 17

C.     The Scènes à Faire Doctrine Does Not Bar EVOX's Claims .............. 19

D.     KAYAK Violated the DMCA By Intentionally Removing
       EVOX's Copyright Notice ................................................................. 20

E.     EVOX is Not Limited to Pursuing a Claim for One Infringement ....... 23

F.     EVOX's Claims Are Not Limited to the Five Example Photos .......... 24

IV.     CONCLUSION ................................................................................................. 25

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Alaska Stock, LLC v. Houghton Mifflin Harcourt Pub. Co.*,
   747 F.3d 673 (9th Cir. 2014) ................................................................... 23

*Bleistein v. Donaldson Lithographing Co.*,
   188 U.S. 239 (1903) ............................................................................. 13

*Bryant v. Media Right Prods., Inc.*,
   603 F.3d 135 (2d Cir. 2010) ................................................................... 24

*Cedars-Sinai Med. Ctr. v. Shewry*,
   137 Cal.App.4th 964 (2006) .................................................................... 8

*Eastern Am. Trio Prods., Inc. v. Tang Elec Corp.*,
   97 F.Supp.2d 395 (S.D.N.Y. 2000) ........................................................ 13

*Ets-Hokin v. Skyy Spirits, Inc.*,
   225 F.3d 1068 (2003) ............................................................ 2, 12, 13, 14

*Ets-Hokin v. Skyy Spirits, Inc.*,
   323 F.3d 763 (9th Cir. 2003) ........................................................... 19, 20

*EVOX Productions, LLC v. California Rent-A-Car, Inc.*,
   No. 2:15-CV-08046-MWF, ECF No. 51 (C.D. Cal. July 26, 2016) ............. 12, 16

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*,
   499 U.S. 340 (1991) .................................................... 2, 12, 16, 17

*Founding Members of the Newport Beach Country Club v. Newport
   Beach Country Club, Inc.*,
   109 Cal.App.4th 944 (2003) .................................................................... 5

*Friedman v. Guetta*,
   No. CV 10-00014 DDP, 2011 WL 3510890
   (C.D. Cal. May 27, 2011) ....................................................................... 16

*Gilliam v. American Broad. Cos. Inc.*,
   538 F.2d 14 (2d Cir. 1976) ................................................................... 4, 9

*Hedging Concepts, Inc. v. First All. Mortg. Co.*,
   41 Cal.App.4th 1410 (1996) .................................................................. 10, 11

*Home Legend, LLC v. Mannington Mills, Inc.*,
   784 F.3d 1404 (11th Cir. 2015) ............................................................ 11, 17

*Honeywell Int'l, Inc. v. Western Support Grp., Inc.*,
   947 F.Supp.2d 1077 (D. Ariz. 2013) ........................................................ 13

*Kelly v. Arriba Soft Corp.*,
   77 F.Supp.2d 1116 (C.D. Cal. 1999), *rev'd in part on other grounds*,
   336 F.3d 811 (9th Cir. 2002) ................................................................... 22

*Kim Seng Co. v. J & A Importers, Inc.*,
   810 F.Supp.2d 1046, 1053-55 (C.D. Cal. 2011) ..................................... 18, 19, 20

*Leigh v. Warner Bros., Inc.*,
   212 F.3d 1210 (11th Cir. 2000) ............................................................... 13

*Lin-Brook Builders Hardware v. Gertler*,
   352 F.2d 298 (9th Cir. 1965) ................................................................... 16

*Lizalde v. Adv. Planning Servs., Inc.*,
   875 F.Supp.2d 1150 (S.D. Cal. 2012) ........................................................ 4

*Masterson Mktg., Inc. v. Lotus Int'l, Inc.*,
   No. 04CV2133-LAB (BLM), 2008 WL 667412
   (S.D. Cal. Mar. 7, 2008) ......................................................................... 19

*MDY Indus., LLC v. Blizzard Entm't, Inc.*,
   629 F.3d 928 (9th Cir. 2010) ..................................................................... 3

*Meshwerks, Inc. v. Toyota Motor Sales U.S.A., Inc.*,
   528 F.3d 1258 (10th Cir. 2008) ............................................................... 17

*Miller v. Glenn Miller Prods.*,
   318 F.Supp.2d 923 (C.D. Cal. 2004) ........................................................ 10

*Monge v. Maya Magazines, Inc.*,
   688 F.3d 1164 (9th Cir. 2012) ................................................................. 23

*Oriental Art Printing v. Goldstar Printing Corp.*,
   175 F.Supp.2d 542, 544 ..................................................................... 18, 20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Pacific Stock, Inc. v. Kona Kustom Tours LLC*,
   No. CIV. 14-00326 ACK-RLP, 2014 WL 7338728
   (D. Haw. Nov. 25, 2014) ....................................................................... 21

*Pagano v. Chas. Beseler Co.*,
   234 F. 963 (S.D.N.Y. 1916) ................................................................. 13

*Playboy Enters. Inc. v. Sanfilippo*,
   No. 97-0670-IEG (LSP), 1998 WL 207856
   (S.D. Cal. Mar. 25, 1998) ..................................................................... 24

*Progeny Ventures, Inc. v. Western Union Fin. Servs., Inc.*,
   752 F.Supp.2d 1127 (C.D. Cal. 2010).................................................... 5

*Propet USA, Inc. v. Shugart*,
   No. C06-0186-MAT, 2007 WL 4376201
   (W.D. Wash. Dec. 13, 2007) ................................................... 20, 21, 22

*S.O.S., Inc. v. Payday, Inc.*,
   886 F.2d 1081 (9th Cir. 1989) ...................................................... 3, 4, 5

*Salehi v. Surfside III Condo. Owners' Ass'n.*,
   200 Cal.App.4th 1146 (2011) ................................................................ 8

*Spiegler v. Home Depot U.S.A., Inc.*,
   552 F.Supp.2d 1036 (C.D. Cal. 2008)............................................. 10, 11

*Stevens v. Corelogic, Inc.*,
   No. 14-CV-1158-BAS-JLB, 2016 WL 4371549
   (S.D. Cal. July 1, 2016) ....................................................................... 22

*Stratton v. Upper Playground Enters., Inc.*,
   No. CV 09-8796 PSG, 2010 WL 5313317 (C.D. Cal. Dec. 16, 2010) .......... 12, 15

*T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*,
   809 F.2d 626 (9th Cir. 1987) .................................................................. 2

*Tiffany Design, Inc. v. Reno-Tahoe Specialty, Inc.*,
   55 F.Supp.2d 1113 (D. Nev. 1999) ....................................................... 13

*Tylor v. Smart Enter., Inc.*,
   No. CIV. 13-00289 HG-RLP, 2013 WL 6843056
   (D. Haw. Dec. 26, 2013)....................................................................... 21

*Wells v. Hair Sols. by M E, Inc.*,
    No. LA Civ. 12-00996 JAK (PLAx), 2012 WL 12882426, at *5
    (C.D. Cal. Dec. 28, 2012) .................................................................. 10

*Wolf v. Walt Disney Pictures & Television*,
    162 Cal.App.4th 1107 (2008) ............................................................. 6

*Xoom, Inc. v. Imageline, Inc.*,
    323 F.3d 279, 285 (4th Cir. 2003), *abrogated by Reed Elsevier, Inc.*
    *v. Muchnick*, 559 U.S. 154, 160 n.2 (2010) ..................................... 24

*Yellow Pages Photos, Inc. v. Ziplocal, LP*,
    795 F.3d 1255 (11th Cir. 2015) ......................................................... 24

**Statutes**

17 U.S.C. § 101 .......................................................................................... 23

17 U.S.C. § 504(c)(1) ................................................................................ 23

17 U.S.C. § 1202(b) ........................................................................ 20, 22, 23

17 U.S.C. § 1202(b)(1) .............................................................................. 21

Cal. Civ. Code § 1649 ............................................................................... 10

Cal. Civ. Code § 1689 ............................................................................... 10

Cal. Civ. Code § 1577 ......................................................................... 10, 11

Cal. Civ. Code § 1578 ......................................................................... 10, 11

Fed. R. Civ. Proc. 12 ................................................................................. 18

Fed. R. Civ. Proc. 37(c)(1) ....................................................................... 25

Fed. R. Civ. Proc. 56(a) .............................................................................. 1

CALDWELL
LESLIE &
PROCTOR

# I.    INTRODUCTION

On March 18, 2014, Plaintiff EVOX Productions, LLC ("EVOX") and Defendant KAYAK Software Corporation ("KAYAK") entered into a licensing agreement (the "Agreement") permitting KAYAK to use EVOX's copyrighted photographs (the "Photographs") solely on KAYAK's website.  The Agreement explicitly limits the scope of use of the Photographs to "a single Portal Website," defined as "a website other than an OEM website or a Dealership website."  As KAYAK well knows, a mobile application is not a website.  KAYAK never requested, obtained, or paid for a license to use the Photographs on its mobile application, never communicated to EVOX its intent to use the Photographs on its mobile applications, and never communicated its purported understanding that doing so was permissible under the terms of the Agreement.

After entering into the Agreement, and despite its clear terms limiting use of the Photographs to a single *website*, KAYAK began distributing, displaying, and reproducing nearly 3,000 of EVOX's Photographs on KAYAK's mobile applications.  In addition to its infringing activities, KAYAK removed copyright management information from EVOX's Photographs appearing on KAYAK's mobile applications without providing copyright attribution information on each screen displaying the copyrighted Photographs, as required by the Agreement.

KAYAK now moves for summary judgment, arguing primarily that the Agreement permitted it to use the Photographs on its mobile applications and that EVOX's Photographs are not subject to copyright protection.  KAYAK's arguments are contradicted by the facts and contrary to well-established Ninth Circuit precedent, and its motion for summary judgment should therefore be denied.

# II.    DISPUTED ISSUES OF FACT PRECLUDE SUMMARY JUDGMENT

Summary judgment is only proper when "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. Proc. 56(a).  "[A]t summary judgment, the judge must view the evidence in the

light most favorable to the nonmoving party:  if direct evidence produced by the moving party conflicts with direct evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact."  *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987).

### III.   KAYAK'S MOTION SHOULD BE DENIED

### A.   There is at Least a Triable Issue as to Whether KAYAK's Use of EVOX's Photographs Exceeded the Scope of the License

KAYAK insists it is not liable for copyright infringement because the Agreement, which granted a license expressly limiting use of the Photographs to a "website," somehow permitted use of the Photographs on KAYAK's mobile applications.  KAYAK's argument should be rejected as contrary to the plain language of the Agreement, contrary to the parties' expressed intentions during the negotiation and execution of the Agreement, and contrary to plain common sense.

### 1.   The Parties' Agreement Established the Scope of the License for KAYAK's Use of EVOX's Copyrighted Photographs

A plaintiff asserting copyright infringement carries the burden of establishing "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991).[1]  "A copyright owner who grants a nonexclusive, limited license

---

[1] EVOX holds copyright certificates for the Photographs, and KAYAK has admitted copying the Photographs on its mobile applications.  Statement of Genuine Disputes Nos. 175-76.  EVOX's copyright certificates "shift[] to the defendant the burden to prove the invalidity of the plaintiff's copyrights.'"  *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1075-76 (2003) ("*Ets-Hokin I*") (citations omitted).  KAYAK's only "evidence" to rebut this presumption is testimony of its expert witness, Gary Elsner, who opines that *EVOX's own evidence* does not establish the validity of EVOX's copyrights.  EVOX is moving to exclude his opinions, but regardless, KAYAK cannot overcome the presumption of validity to prevail on its motion merely by pointing to a purported absence of evidence from EVOX .  *Id.*

ordinarily waives the right to sue licensees for copyright infringement, and it may sue only for breach of contract.  However, if the licensee acts outside the scope of the license, the licensor may sue for copyright infringement."  *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 939 (9th Cir. 2010) (internal citations and quotations marks omitted).  Put another way, "[a] licensee infringes the owner's copyright if its use exceeds the scope of its license."  *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1087-88 (9th Cir. 1989).

### (a) The Scope of the License in the Agreement Is Clearly and Unambiguously Defined as Use on a Website

The Agreement granted KAYAK a "limited license" to use the Photographs "within the Scope of Use" of the Agreement, defined as:  "Portal Website Use:  (a) Use in a research application on a single Portal Website; (b) Use as Accent Graphics on a single Portal Website."  The Agreement specifically defines "Portal" as "'Portal' means a website other than OEM website or a Dealership website."  Statement of Genuine Disputes ("SGD") No. 167.  The Agreement also states that "[n]o license is granted to use the Licensed Materials *in any manner* in any present or future format *except for uses* and formats *expressly permitted* by the definition of Scope of Use in this Agreement."  (emphasis added).

KAYAK's claim that "the term 'Portal' is not defined unambiguously" is belied by the Agreement itself.  There is no ambiguity in the Agreement's definition "'Portal' means a website . . . ."  The Agreement also states that it only grants a license for uses "expressly permitted" by the Agreement.  The only use of the Photographs expressly permitted in the Agreement is on a website, and as discussed further below, a mobile application is not a website.

### (b) KAYAK Admits to Using EVOX's Copyrighted Photographs On its Mobile Applications

Here, KAYAK admits—as it must—that it used the Photographs on its mobile applications.  Through the discovery process, KAYAK has acknowledged

that its mobile applications accessed at least 2,910 of EVOX's Photographs and copied them to users' mobile devices.  SGD No. 175.  It is also undisputed that EVOX has copyright certificates for each of these Photographs, and as set forth below, KAYAK has failed to overcome EVOX's presumption of copyrightability. *Id.* No. 176.  Because EVOX holds valid copyrights in the Photographs, the Agreement expressly limits the scope of use of the Photographs to a website, and KAYAK used the Photographs on its mobile applications, KAYAK is liable for copyright infringement as to each of these 2,910 Photographs.

### 2.    Under Federal Law, the Agreement Must Be Interpreted So As to Protect EVOX's Rights As the Copyright Owner

The scope of the license in the Agreement is determined in the first instance by federal case law governing the interpretation of copyright license agreements. *S.O.S., Inc.*, 886 F.2d at 1087-88; *see also Gilliam v. American Broad. Cos. Inc.*, 538 F.2d 14, 21 (2d Cir. 1976); *Lizalde v. Adv. Planning Servs., Inc.,* 875 F.Supp.2d 1150 (S.D. Cal. 2012).

KAYAK's claim that use of the Photographs on its mobile applications was permitted because "[n]othing in the Agreement expressly prohibits use of the images on a mobile app" is therefore contrary to controlling federal law.  Motion for Summary Judgment ("Mot.") at 4; *Lizalde*, 875 F.Supp.2d at 1150.  KAYAK's assertion is also contradicted by the Agreement itself, which expressly states that, "No license is granted to use the Licensed Materials in any manner . . . *except for uses* and formats *expressly permitted* by the definition of Scope of Use in this Agreement."  SGD No. 169.

Finally, the federal authority cited above disposes of KAYAK's assertion that "any ambiguity [in the Agreement should] be resolved against Evox[.]"  Mot. at 6; *see S.O.S., Inc.*, 886 F.2d at 1087-88.  Moreover, the parties expressly agreed that the Agreement would be "construed without regard to the party or parties

1  responsible for its preparation and will be deemed to have been prepared jointly by
2  the parties." *Id.*

3         **3.**       **Under California Law, the Agreement Is Not Ambiguous**

4        Given the plain language of the Agreement, there is no need to apply
5  principles of contractual interpretation under California law.  Even if those
6  principles of California law are applied, the Agreement is not ambiguous and
7  KAYAK's subjective, uncommunicated interpretation must be rejected.

8        The starting point for contract interpretation is the plain language of the
9  document itself.  *Progeny Ventures, Inc. v. Western Union Fin. Servs., Inc.*, 752
10  F.Supp.2d 1127, 1132-33 (C.D. Cal. 2010); *see also Founding Members of the*
11  *Newport Beach Country Club v. Newport Beach Country Club, Inc.*, 109
12  Cal.App.4th 944, 956 (2003).  EVOX's interpretation of the Agreement relies on the
13  clear definition of "Portal" that appears in the Agreement, which the parties
14  bargained for and accepted.  *See* SGD No. 167.  Other language reinforces the
15  conclusion that the license granted was limited to use of EVOX's Photographs on a
16  website, and did not include use on a mobile application.  Under "9. REPORTING
17  AND TRACKING REQUIREMENTS," for example, the Agreement makes
18  multiple references to websites and URLs, including requiring a monthly "report on
19  unique page views *per webpage* containing Licensed Materials." *Id.* No. 170.

20        **(a)**      **The Agreement is not reasonably susceptible to**
21                    **KAYAK's proffered interpretation**

22        The clear written terms of the Agreement, all of which were reviewed,
23  negotiated for, and approved, limit the scope to a single website.  *See Progeny*
24  *Ventures, Inc.*, 752 F.Supp.2d at 1132-33.  Even if extrinsic evidence is considered,
25  however, KAYAK's interpretation must be rejected as unreasonable.

26        "Where parties dispute the meaning of contractual language, the Court must
27  first decide whether the disputed language is 'reasonably susceptible' to the
28  interpretation urged by the party."  *Id.* (citation omitted).  In making this

CALDWELL
LESLIE &
PROCTOR

1   determination, the Court "provisionally receives any proffered extrinsic evidence

2   that is relevant to prove a meaning to which the language of the instrument is

3   reasonably susceptible.  If, in light of the extrinsic evidence, the language is

4   reasonably susceptible to the interpretation urged, the extrinsic evidence is then

5   admitted to aid the court in its role in interpreting the contract."  *Wolf v. Walt Disney*

6   *Pictures & Television*, 162 Cal.App.4th 1107, 1126-27 (2008) (citations omitted).

7               **(i)       KAYAK's proffered meaning of "Portal" is not**

8                          **supported by its own extrinsic definition**

9       Although "Portal" is defined by the Agreement, KAYAK nonetheless refers

10  to an online glossary in support of the proposition that "in the online context,

11  'portal' can be understood to be an anchor site that connects to a wide array of other

12  content."  Mot. at 5.  This glossary actually defines "portal" as "a World Wide Web

13  site that is or proposes to be a major starting site for users when they get connected

14  to the Web or that users tend to visit as an anchor site."  *See*

15  http://whatis.techtarget.com/definition/portal.  The same glossary defines "Web site"

16  as "a related collection of World Wide Web (WWW) files that includes a beginning

17  file called a home page."  *See* http://whatis.techtarget.com/definition/website.  It

18  also defines "mobile app" as "a software application developed specifically for use

19  on small, wireless computing devices, such as smartphones and tablets."  *See*

20  http://whatis.techtarget.com/definition/mobile-app.  Even with resort to KAYAK's

21  handpicked extrinsic glossary, a portal is a type of website, and a website *is not a*

22  *mobile application*.

23      Indeed, KAYAK's claim that it "believes its website is fairly considered a

24  portal to other content that is part of its travel service, including the mobile app" is a

25  non sequitur.  Mot. at 5.  KAYAK's mobile applications are obviously not

26  themselves "other content" that are accessed through its website.  Rather, KAYAK's

27  mobile applications are software applications that provide a platform— separate and

28  distinct from its website platform— for KAYAK to *display* content on users'

1   wireless computing devices, in this case content that included the Photographs.

2   SGD Nos. 183-84.  Even KAYAK's expert, who testified to his understanding of the

3   term "portal" as it is commonly understood in the stock photography business,

4   admitted that he didn't "think there'd be any sense in" having a portal website that

5   links to a mobile application."  *Id.* No. 184.  KAYAK's novel definition of "Portal,"

6   which is plainly conjured up to justify KAYAK's infringing behavior, should be

7   rejected outright.

8                      **(ii)   KAYAK never told EVOX that it intended to use**

9                      **the Photographs on its mobile applications**

10   At the outset of the parties' negotiations, EVOX employee Nena Addison

11   emailed KAYAK employee Lauren Fulton, who had contacted EVOX about

12   licensing its photographs and who handled all negotiations with EVOX.  SGD Nos.

13   11-12.  As part of her inquiry about KAYAK's requirements, Ms. Addison asked,

14   ████████████████████████████████████████████████

15   ████████████████████████████████████████████████

16   ██████████████████████████████████████  Ms.

17   Fulton thereby confirmed that KAYAK intended to use EVOX's Photographs only

18   on its website and perhaps ████████████ which KAYAK never identified.

19   Ms. Fulton made no mention at all of mobile applications.  *Id.*

20   Ms. Fulton claims she knew that KAYAK intended to use EVOX's

21   Photographs on its mobile applications, but cannot recall why she did not

22   communicate this planned use to Ms. Addison.  *Id.* No. 12.  Ms. Fulton never asked

23   about the cost of using the Photographs on a mobile application as opposed to a

24   website, and does not know how EVOX would be aware of KAYAK's intent to use

25   EVOX's photographs on its mobile applications unless Ms. Fulton—or someone

26   else at KAYAK—told EVOX.  *Id.*

27   After these initial communications, EVOX repeatedly made references only

28   to website use throughout the ensuing negotiations.  On January 23, 2014, for

example, EVOX employee John Brosnan emailed Ms. Fulton and informed her that EVOX would offer to license the Photographs ██████████████████████ ████   SGD No. 22.  Despite Mr. Brosnan's clear limit of ███████████████ Ms. Fulton claims that she understood this offer to include use on KAYAK's mobile applications, although she does not recall whether she conveyed her understanding to Mr. Brosnan.  *Id.*  Ms. Fulton did not tell anyone at EVOX that she understood the Agreement's definition of "Portal" as a website to include a mobile application. *Id.*  KAYAK Senior Vice President Timothy Knowling, who signed the Agreement for KAYAK and supervised Ms. Fulton, testified that he initially thought the term "Portal" was "strange" when he reviewed the Agreement and he discussed it with Ms. Fulton, but he admitted that he never asked to have the definition clarified or changed and never communicated about it with EVOX.  *Id.*

Later in the negotiations, Mr. Brosnan asked Ms. Fulton to confirm that the Photographs would ███████████████████████████   *Id.*  In response, Ms. Fulton replied, ██████████████████████████████████████████ ███████████████████████████████████████ with no mention of mobile ███████████   *Id.*  Similarly, in connection with KAYAK's request to remove EVOX's copyright notice from the Photographs, Mr. Brosnan asked Ms. Fulton to provide a mock-up of the alternative copyright attribution that EVOX would require KAYAK to place ████████████████████   *Id.*  Once more, Ms. Fulton mentioned only KAYAK's website, provided EVOX with an example of copyright attribution *on its website*, and never mentioned anything use on mobile applications.

### (iii)   Evidence of KAYAK's Subjective, Unexpressed Intent Is Immaterial

"The parties' undisclosed intent or understanding is irrelevant to contract interpretation."  *Cedars-Sinai Med. Ctr. v. Shewry*, 137 Cal.App.4th 964, 980 (2006) (internal quotation marks and citation omitted); *see also Salehi v. Surfside III Condo. Owners' Ass'n.*, 200 Cal.App.4th 1146, 1159 (2011).  There is no evidence

1  that KAYAK ever disclosed its intent to use the Photographs on its mobile

2  applications or its understanding of the Agreement as permitting such use.  SGD

3  Nos. 22, 51 (undisputed that use on KAYAK's mobile application never

4  "specifically came up" during the parties' negotiations).

5              **(iv)    The Remainder of KAYAK's Extrinsic Evidence**

6                          **is Immaterial**

7         KAYAK references various other extrinsic evidence to justify its

8  misinterpretation of the Agreement, none of which is material.  KAYAK claims, for

9  example, that EVOX enters into licensing agreements with other parties that

10 expressly permit use on a mobile application and that "[a]ll that is done" in these

11 agreements is "to note that 'portal website' includes a mobile app."  Mot. at 5.  To

12 the contrary, in these agreements, "Downloadable Mobile Applications" is expressly

13 defined as a separate use from "Portal Website" and EVOX routinely adds separate

14 charges for this additional use.  SGD No. 46.  Moreover, the fact that EVOX likely

15 would have permitted a particular use, *had KAYAK actually asked for that use*, does

16 not entitle KAYAK to presume it can invade EVOX's rights under the Copyright

17 Act and use the Photographs in a manner outside the scope of the Agreement.  *See*

18 *Gilliam*, 538 F.2d at 21.

19        KAYAK also repeatedly complains that it "paid for all unique visits on its

20 mobile app and website," but KAYAK never told EVOX that its payments included

21 use of the Photographs on KAYAK's mobile applications, and KAYAK's usage

22 reports listed only  "# of IPs" that viewed the images on a particular day, and did not

23 otherwise disclose that the Photographs appeared on its mobile applications.  SGD

24 No. 16.  Committing copyright infringement by using the Photographs in violation

25 of the Agreement is not remedied by paying the licensor for a use that is *not*

26 *permitted by the Agreement* and this evidence of KAYAK's subjective, undisclosed

27 misinterpretation of the Agreement is immaterial.

28

CALDWELL
LESLIE &
PROCTOR

**4.    Even If the Agreement Were Ambiguous, Which It is Not, Summary Judgment Would Be Inappropriate**

"Where the terms of the contract 'are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it.'" *Wells v. Hair Sols. by M E, Inc.*, No. LA Civ. 12-00996 JAK (PLAx), 2012 WL 12882426, at *5 (C.D. Cal. Dec. 28, 2012), *quoting* Cal. Civ. Code § 1649; *see also Miller v. Glenn Miller Prods.*, 318 F.Supp.2d 923, 934-35 (C.D. Cal. 2004).

Even if the term "Portal" were ambiguous, it must be interpreted as EVOX believed that KAYAK understood the term.  Cal. Civ. Code § 1649.  The undisputed evidence demonstrates that EVOX believed that KAYAK understood the Agreement to convey a license solely for use of EVOX's photographs on KAYAK's website.  If there were any ambiguity in the definition of "Portal," it can and should be resolved consistent with EVOX's position as the nonmoving party, rendering summary judgment inappropriate.  *Miller*, 454 F.Supp.2d at 934-35.

**5.    There Is No Basis For Rescission or Reformation**

Next, KAYAK argues that a mistake of fact or law occurred (it apparently isn't sure which) that warrants rescission or reformation of the parties' Agreement. Mot. at 7-9.  Neither rescission nor reformation is appropriate here.

The grounds for rescission are set forth in California Civil Code section 1689, and KAYAK relies on the ground of "mistake."  Mot. at 8.  "Mistake" for purposes of 1689 is defined in Civil Code sections 1577 (mistake of fact) and 1578 (mistake of law).  *See Hedging Concepts, Inc. v. First All. Mortg. Co.*, 41 Cal.App.4th 1410, 1421 (1996).  To the extent there was any "mistake,", it was unilateral on the part of KAYAK, because "'mutual mistake'" requires "'a situation where both parties share the same misconception.'"  *Spiegler v. Home Depot U.S.A., Inc.*, 552 F.Supp.2d 1036, 1055 (C.D. Cal. 2008) (citation omitted).  A party's unilateral misinterpretation of a contract is not a mistake of fact, and to the extent it is a

1  mistake of law, it "does not fit the definition of mistake of law supporting

2  rescission." *Hedging*, 41 Cal.App.4th at 1421-22.

3       Similarly, "in order to be granted reformation [KAYAK] must show that [it]

4  made a mistake at the time of contracting, and that the mistake was known to or

5  suspected by [EVOX]." *Spiegler*, 552 F.Supp.2d at 1055.   KAYAK's undisclosed

6  misinterpretation of the Agreement is not a "mistake" under either Civil Code

7  sections 1577 or 1578 that warrants reformation.  Regardless, EVOX never knew of,

8  nor even suspected, KAYAK's "mistake" at the time of contracting.  Finally,

9  KAYAK's repeated complaints of an "unconscionable windfall of millions of

10  dollars" for EVOX are misplaced.  Mot. at 9.  EVOX's monetary demand is not

11  "unconscionable," it is the amount of statutory damages to which EVOX will be

12  entitled under the Copyright Act should it prove its case against KAYAK, and it has

13  no bearing on the interpretation of the Agreement.

14       **B.    EVOX's Photographs Are Copyrightable**

15       KAYAK devotes the majority of its Motion to arguing that EVOX's

16  copyrighted Photographs are "not copyrightable" because they are not sufficiently

17  original.  Mot. at 9-21.  KAYAK's argument is premised on a strawman—that

18  EVOX has not identified any original expression in its Photographs and has only

19  described its "process" for taking photographs.  But EVOX has never claimed a

20  copyright over its process for taking photographs.[2]  *Compare, Home Legend, LLC v.*

21  *Mannington Mills, Inc.*, 784 F.3d 1404, 1413-14 (11th Cir. 2015).

22       Contrary to KAYAK's repeated assertions, EVOX has identified numerous

23  creative decisions made in the production of its Photographs as well as the resulting

24  protectable expression in those same Photographs.  KAYAK's arguments to the

25  contrary ignore or misconstrue long-established principles of copyright law that

26  ———————————

27  [2] Even KAYAK's expert witness admitted this at his deposition, despite KAYAK's

28  counsel's efforts to steer his testimony.  SGD No. 76.

CALDWELL
LESLIE &
PROCTOR

-11-

1   make clear EVOX's photographs are subject to protection under the Copyright Act.

2   As another Court in the Central District recently held with respect to EVOX's

3   photographs, "It is undisputed that the photographs are of [EVOX's] independent

4   creation.  Therefore the Court examines only whether the Photographs possess 'at

5   least some minimal degree of creativity.'  The Court concludes that binding Ninth

6   Circuit authority definitively answers this question in [EVOX's] favor." *EVOX*

7   *Productions, LLC v. California Rent-A-Car, Inc.*, No. 2:15-CV-08046-MWF

8   (RAOx), ECF No. 51 at 14 (C.D. Cal. July 26, 2016), a copy of which is attached as

9   Exhibit CC to the Declaration of Craig Bessenger.  There is no basis to reach a

10  different conclusion here, and EVOX's motion should therefore be denied.[3]

11          **1.      EVOX's Photographs Easily Surpass the Originality**

12                  **Threshold Required for Copyright Protection**

13          The threshold copyright requirement of minimum originality is well-

14  established in the Ninth Circuit.  "The *sine qua non* of copyright[ability] is

15  originality. . . .  Original, as the term is used in copyright, means only that the work

16  was independently created by the author (as opposed to copied from other works),

17  and that it possesses at least some minimal degree of creativity." *See Feist*, 499

18  U.S. at 345; *Ets-Hokin I*, 225 F.3d at 1076 (commercial photograph of bottle

19  warranted copyright protection); *Stratton v. Upper Playground Enters., Inc.*, No. CV

20  09-8796 PSG (PJWx), 2010 WL 5313317, at *3-*4 (C.D. Cal. Dec. 16, 2010).

21          "[A]lmost any[] photograph may claim the necessary originality to support a

22  copyright merely by virtue of the photographers' [*sic*] personal choice of subject

23  matter, angle of photograph, lighting, and determination of the precise time when

24  _____

25  [3] KAYAK's effort to justify its unauthorized use of the Photographs by stripping
    them of copyright protection should also be rejected because it is expressly barred
26  by the Agreement, under which EVOX warranted that it owned the copyrights to the
    Photographs and KAYAK agreed not to "claim any right to use or exploit such
27  rights except as expressly permitted by this Agreement." SGD No. 179.
28

CALDWELL
LESLIE &
PROCTOR

-12-

the photograph is to be taken.' This circuit is among the majority of courts to have adopted this view.'' *Ets-Hokin I*, 225 F.3d at 1076-77 (citations omitted). Tellingly, KAYAK references *Ets-Hokin I* only once, in a footnote, and fails to distinguish it.  Its statement of the law of copyright applies to all photographs, not just the photographs at issue there.  *See also*, *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1215 (11th Cir. 2000) (elements of artistic craft protected by copyright in photograph include selection of lighting, shading, timing, angle, and film); *Tiffany Design, Inc. v. Reno-Tahoe Specialty, Inc.*, 55 F.Supp.2d 1113, 1119 (D. Nev. 1999) (listing similar elements).

It is also beyond dispute that photographs of objects can enjoy copyright protection.  *Ets-Hokin I*, 225 F.3d at 1075; *Eastern Am. Trio Prods., Inc. v. Tang Elec Corp.*, 97 F.Supp.2d 395, 417 (S.D.N.Y. 2000); *Pagano v. Chas. Beseler Co.*, 234 F. 963, 964 (S.D.N.Y. 1916).  This is true even if the photograph is used for commercial purposes or in advertising.  *See Bleistein v. Donaldson Lithographing Co.*, 188 U.S. 239, 251 (1903).  Photographs of utilitarian objects, even if used to sell those articles, are copyrightable if the photographer has chosen from among any possible angles and portions of the object on which to focus.  *Honeywell Int'l, Inc. v. Western Support Grp., Inc.*, 947 F.Supp.2d 1077, 1085 (D. Ariz. 2013) (citing *Ets-Hokin I*, 225 F.3d at 1077).

### (a)    EVOX Made Creative Decisions In Producing Its Photographs, Resulting In Protectable Expression

In EVOX's Fourth Amended Response to KAYAK's Interrogatory No. 2, EVOX described in considerable detail the creative decisions EVOX made in the process of creating its photographs.  *See*, *e.g.*, SGD No. 71 (citing to discovery responses).  In the same discovery response, EVOX identified the resulting protected expression in five of its photographs selected by KAYAK pursuant to

1   Judge Rosenberg's order.[4]  The distinction between creative choices and resulting
2   protected expression was recognized by the Ninth Circuit in *Ets-Hokin I* when the
3   Court explained that "decisions by the photographer—or, more precisely, the
4   elements of photographs that *result* from these decisions—are worthy of copyright
5   protection."  225 F.3d at 1074-75 (emphasis in original).

6        As EVOX stated in its discovery response, the fact that it made creative
7   decisions in producing its Photographs—regardless of the substance of the
8   decisions—qualifies the Photographs for copyright protection, but these decisions
9   are not themselves copyrightable.  SGD No. 71 (citing to discovery responses).  The
10  protected expression *resulting* from these creative decisions, is what is protected
11  under the Copyright Act.

12       KAYAK's claim that EVOX made no creative decisions in the production of
13  its photographs is contradicted by the detailed descriptions of those creative
14  decisions in EVOX's discovery responses, its internal written guides for
15  photography, post-production, and quality assurance, and its witnesses' testimony,
16  which include discussions of EVOX's selection of "(i) angles, (ii) distance (from the
17  camera to the subject vehicle), (iii) the subject's pose (in this case, the front wheel is
18  turned straight), (iv) lighting (in particular, the overhead light box reflected in the
19  front window), (v) the reflection of the grey half wall (reflected against the doors to
20  create the contrast in the door skins), (vi) the compositing of the car against a
21  transparent or white background, and (vii) the color of the car" and the resulting
22  protected expression from each of these choices.  SGD No. 71 (citing to discovery
23  responses).  EVOX also articulates the resulting protected expression from these
24  decisions.  *Id.*

25

26

27  _____
    [4] As discussed further below, KAYAK's claim that EVOX "refused" to identify
28  protectable expression in more than five of its photographs has no basis.

CALDWELL
LESLIE &
PROCTOR                                              -14-

1    Similarly, KAYAK's assertion that "the very rigor and precision of EVOX's

2  process precludes creative choice" is contradicted by the record.  Mot. at 11.  EVOX

3  photographer Michael Magat testified, for example, that he makes decisions

4  regarding the individual photographs he creates *even when following EVOX's*

5  *documented process*.  *See, e.g.*, SGD 72 (citing Magat deposition testimony).  Magat

6  further testified that EVOX's process is constantly adjusted due to differences in the

7  cars.  *Id*.  EVOX also has an extensive post-production process that takes place

8  before photographs are finalized and requires judgments made by independent post-

9  production artists.  SGD 78.  KAYAK complains there are no "records" of the

10  changes made by EVOX in post-production, but there is no requirement in the

11  Copyright Act or in the case law—and KAYAK cites none—that a party retain

12  "records" of the creative decisions made in producing a photograph.

13              **(b)     KAYAK Mistakes "Originality" for "Novelty" and**

14                     **Otherwise Misapplies Copyright Law**

15    KAYAK repeatedly dismisses EVOX's creative choices as not "original,"

16  because EVOX was not the first party to make the particular choice.  *See, e.g.*, Mot.

17  at 13-14 (Camera height:  "[EVOX's witness] . . . was not aware whether EVOX

18  was the first to use this selection of 32 inches above the plane of a turntable on

19  which the car is positioned"); *id*. at 15 (same regarding camera distance to subject);

20  *id*. (same with respect to pose of subject); *id*. at 16 (same regarding selection of

21  camera lens, focal length, and focal point); *id*. at 17 (same regarding lighting).

22    KAYAK seemingly conflates "originality" in the copyright context with

23  "novelty."  *See Stratton*, 2010 WL 5313317, at *3 (rejecting defendant's argument

24  that copyrighted illustrations of bongs were not "original" and therefore invalid,

25  because it "seemingly conflates copyright protection with patent protection").  The

26  Ninth Circuit cautioned against this long ago.  "On the issue of originality the trial

27  court seems to have been led astray by the dual meaning of the word. . . .

28  Originality in copyright law is not a question of creativity or novelty, but one of

1  authorship or source of origin." *Lin-Brook Builders Hardware v. Gertler*, 352 F.2d

2  298, 301 (9th Cir. 1965); *see also Friedman v. Guetta*, No. CV 10-00014 DDP

3  (JCx), 2011 WL 3510890, at *3 (C.D. Cal. May 27, 2011) (Claim that "selected

4  pose and arrangement" of subjects in photograph "was common," did not undermine

5  copyrightability because "'[o]riginality does not signify novelty . . . .'" (quoting

6  *Feist*, 499 U.S. at 345)).

7      KAYAK has not cited, and cannot cite, a single case in which the

8  copyrightability of a photograph depended upon the *substance* of the specific

9  choices made by the photographer (*e.g.*, whether the actual distance in feet from the

10  camera to the subject was "common," or whether the actual angle at which the

11  subject is posed cannot be distinguished from other similar photographs) rather than

12  *the fact that the photographer made creative choices at all*.  In granting summary

13  judgment for EVOX on this very issue, another court in the Central District stated

14  that "Defendants' arguments that the Photographs lack originality because the . . .

15  techniques use are 'standard or unoriginal' also fail to grapple with the prevailing

16  approach in the Ninth Circuit . . . . *What matters here is not the novelty of the*

17  *selected technique but the consecutive creative choices emanating from [EVOX's]*

18  *selection of a particular technique from a field of other possible techniques.*" *EVOX*

19  *Productions, LLC v. California Rent-A-Car, Inc.*, 2:15-CV-08046-MWF (RAOx),

20  ECF No. 51 at 15 (C.D. Cal. July 26, 2016) (emphasis added).

21      In other words, "what matters here" is not the actual distance of the camera

22  from the car being photographed (as but one example of EVOX's decisions), and

23  whether any other photographer has ever selected that exact distance when taking a

24  photograph, but the fact that EVOX *made a decision* about the distance of the

25  camera from the car.  The same applies to the other numerous decisions reflected in

26  EVOX's Photographs.  *See also Friedman*, 2011 WL 3510890, at *3.  It is

27  undisputed that EVOX selected and arranged the subjects of its Photographs.  "[N]o

28  more is required . . . ." *Id.*  Nonetheless, EVOX made additional decisions about

1  lighting, reflection and shadow, and camera lens, focal length, and focal point.  *See*,

2  *e.g.*, SGD Nos. 81, 83.  KAYAK does not dispute that EVOX made these decisions,

3  it merely criticizes the substance of the decisions or their supposed lack of novelty,

4  which have no bearing on copyrightability.[5]  *Home Legend*, 784 F.3d at 1409 (citing

5  *Feist*, 499 U.S. at 358) ("Originality is not novelty.").

## 2.  KAYAK's Remaining Authority Is Inapposite

7  KAYAK mistakenly relies on *Meshwerks, Inc. v. Toyota Motor Sales U.S.A.,*

8  *Inc.*, 528 F.3d 1258, 1260 (10th Cir. 2008), which does not even involve

9  photographs.  Rather, *Meshwerks* involved a new technology developed by the

10 plaintiff to provide a "digital mesh" model of a car that could then be customized by

11 the plaintiff's clients.  The *Meshwerks* court specifically distinguished the

12 technology from "product photographs," finding the plaintiff's models "have

13 substantial advantages over" such product photographs because the clients would

14 add all of the creative expression to the otherwise featureless digital models.  *Id.* at

15 1260.  Unlike the numerous decisions made by EVOX in producing the

16 Photographs, "Meshwerks did not make any decisions regarding lighting, shading,

17 the background in front of which a vehicle would be posed, the angle at which to

18 pose it, or the like—in short, its models reflect none of the decisions that can make

19 depictions of things or facts in the world, whether Oscar Wilde or a Toyota Camry,

20 new expressions subject to copyright protection." *Id.* at 1265.  The *Meshworks*

21 court did *not* find that because third parties might also have made digital models that

22 resembled the plaintiff's model, there was no copyright protection.  Rather, the

23 Court found that the plaintiff had stripped the creative decisions out of the models

24 and so they were not protectable.

25

---

26 [5] KAYAK's others criticisms of EVOX's decisions, *e.g.*, that the decisions were the
result of "trial and error," and therefore "the opposite of creative decision

27 making"—without ever explaining why "trial and error" is not "creative"—are

28 similarly without citation or support in the relevant case law.  Mot. at 13.

1    Another out-of-circuit case relied on by KAYAK, *Oriental Art Printing v.*

2 *Goldstar Printing Corp.*, is a self-acknowledged outlier of a decision that involved

3 the alleged infringement of a "copyright in a menu design for Chinese restaurants."

4 175 F.Supp.2d 542, 544.  Defendants moved to dismiss under Rule 12, arguing that

5 photographs appearing in the copyrighted menu design were not themselves subject

6 to copyright protection.  *Id.* at 545.  In direct contrast to the evidentiary record here,

7 which contains detailed accounts of how the Photographs were produced, the court

8 in *Oriental Art Printing* specifically observed that "plaintiffs fail to describe how the

9 photographs were taken, or how they were incorporated into the copyrighted design

10 as a whole."  *Id.* at 547.  Further distinguishing the facts of *Oriental Art Printing*

11 from this matter, the plaintiffs' witness "state[d] that he worked with a photographer

12 on the 'lighting' and 'angles,' [but] he provide[d] no description of either the

13 lighting or angles employed, or any desired expression."  *Id.*  From merely looking

14 at the photographs, the court could only conclude that "the lighting and angle appear

15 to be equivalent in every photograph" and that the particular facts presented "*the*

16 *rare case* where the photographs contained in plaintiffs' work lack the creative or

17 expressive elements that would render them original works subject to" copyright

18 protection.  *Id.* (emphasis added).

19    Finally, *Kim Seng Co. v. J & A Importers, Inc.* is equally inapposite.  810

20 F.Supp.2d 1046, 1053-55 (C.D. Cal. 2011).  The plaintiff in that case alleged that it

21 owned copyrights in a "bowl-of-food 'sculpture'" and the photograph of that

22 sculpture appearing on a "rice stick food package[]," and that defendant's own food

23 package infringed its copyrights.  *Id.* at 1050.  With respect to the photograph at

24 issue, the *Kim Seng Co.* court concluded only that it could not be considered a

25 derivative work, because the sculpture itself was not subject to copyright protection.

26 *Id.* at 1055.  In reaching this conclusion, the court expressly acknowledged that the

27 photo itself might have been independently copyrightable, *id.* at 1055-56, but

28 concluded that the photographer had not assigned the independent copyright to the

CALDWELL
LESLIE &
PROCTOR

1  plaintiff.  *Id.* at 1056-57.  *Kim Seng Co.* then cites to *Oriental Art Printing* and states

2  that the doctrine of scènes à faire would provide the defendant with a defense to

3  infringement.  *Id.* at 1057-58.  As relevant here, however, the decision fails to

4  recognize the Ninth Circuit's holding that, even if the scènes à faire doctrine applies,

5  a "thin copyright" exists that prohibits "virtually identical copying."  *Ets-Hokin v.*

6  *Skyy Spirits, Inc.*, 323 F.3d 763, 766 (9th Cir. 2003) ("*Ets-Hokin II*").

7  　　　　**C.**　**The Scènes à Faire Doctrine Does Not Bar EVOX's Claims**

8  　　　　KAYAK argues, incorrectly, that the scènes à faire doctrine prevents EVOX

9  from enforcing its copyrights in the Photographs, because the creative expression in

10  the Photographs is allegedly too similar to *other images* of cars produced by third

11  parties that are not even at issue in this case.  This argument is wrong as a matter of

12  law and has been previously rejected by courts in the Ninth Circuit.

13  　　　　"'Under the [ ] doctrine of scènes à faire, courts will not protect a copyrighted

14  work from infringement if the expression embodied in the work necessarily flows

15  from a commonplace idea.'"  *Ets-Hokin II*, 323 F.3d at 765 (citation omitted).

16  Crucially, however, "where the range of protectable expression is constrained by

17  both the subject-matter idea of the photograph and the conventions of the

18  commercial product shot" the photographer still has "a 'thin' copyright, which

19  protects against only virtually identical copying." *Id.* at 766; *see Masterson Mktg.,*

20  *Inc. v. Lotus Int'l, Inc.*, No. 04CV2133-LAB (BLM), 2008 WL 667412, at *6-*8

21  (S.D. Cal. Mar. 7, 2008) (Citing the "thin copyright" principle from *Ets-Hokin II*

22  and finding "no basis for Lotus' concern that recognizing a copyright in the

23  photographs Plaintiff took would prevent Lotus from making or using other

24  photographs of the same products. . . . Plaintiff is merely claiming ownership in its

25  own photographs and catalog, and has contended that Lotus and other Defendants

26  used exact or virtual duplicates of its photographs.").  The two cases upon which

27  KAYAK primarily relies are inapposite because both fail to recognize the Ninth

28  Circuit's holding that, even if the scènes à faire doctrine applies, a "thin' copyright"

1   exists that prohibits "virtually identical copying."  *Ets-Hokin II*, 323 F.3d at 766; *see*

2   *Kim Seng*, 810 F.Supp.2d at 1057; *Oriental Art Printing*, 175 F.Supp.2d at 547 n.3.

3       Accordingly, even if the creative expression in EVOX's Photographs is

4   "indispensable, or at least standard" in photographs of cars, which EVOX disputes,

5   EVOX is still entitled to enforce its copyrights against parties like KAYAK that

6   make *actual copies* of EVOX's *actual Photographs*, as admittedly occurred here.

### D.   KAYAK Violated the DMCA By Intentionally Removing EVOX's Copyright Notice

9       KAYAK argues that summary judgment should be granted in its favor on

10  EVOX's second cause of action, which alleges KAYAK violated the Digital

11  Millennium Copyright Act ("DMCA") by removing EVOX's copyright

12  management information ("CMI") from the Photographs and failing to provide

13  alternative copyright attribution in accord with the Agreement.  Mot. at 22.  In order

14  to prevail on its claim, EVOX must show that KAYAK: (1) "intentionally

15  remove[d]" EVOX's CMI from the Photographs (2) without EVOX's authorization,

16  while (3) "knowing, or . . . having reasonable grounds to know, that [the removal

17  would] induce, enable, facilitate, or conceal an infringement" of the federal

18  copyright laws.  17 U.S.C. § 1202(b).

19      KAYAK's claim that it did not intentionally remove EVOX's CMI is

20  contradicted by the evidence.  The Photographs EVOX provided to KAYAK

21  included EVOX's trademark and logos, and KAYAK deliberately used software in

22  its possession to remove the trademark and logos.  SGD No. 177.  █████████

23  ████████████████████████████████████████████████████████

24  ██████████████████████████  Thus, KAYAK intentionally removed the

25  CMI.  *See Propet USA, Inc. v. Shugart*, No. C06-0186-MAT, 2007 WL 4376201, at

26  *4 (W.D. Wash. Dec. 13, 2007) (plaintiff's presentation of evidence that defendant

27

28

1   had software that could remove copyright information established intentionality).[6]

2        KAYAK nevertheless argues that it is not liable because it did not remove the

3   copyright notice for the purpose of "induc[ing], enabl[ing], facilitat[ing], or

4   conceal[ing] an infringement."  Mot. at 23.  KAYAK's argument ignores the

5   express language of Section 1202(b)(1), which states that a plaintiff need not show

6   "that the removal was done to induce, enable, facilitate, or conceal an infringement

7   . . . only . . . that [the defendant] had 'reasonable grounds to know' that the removal

8   would induce, enable, facilitate or conceal an infringement."  *Propet*, 2007 WL

9   4376201, at *3-*4; *see also* 17 U.S.C. § 1202(b)(1) (word "intentionally" modifies

10   only phrase "remove or alter").  In *Propet*, the plaintiff satisfied this burden by

11   presenting evidence regarding the defendant's "awareness as to issues of copyright,"

12   its status as a "multinational corporation," and defendant's former employee's

13   "knowledge of Shugart's copyright ownership."  *Propet*, 2007 WL 4376201, at *4.

14        Here, as in *Propet*, there is ample evidence that KAYAK knew or should have

15   known that its removal of EVOX's CMI would induce, enable, facilitate or conceal

16   an infringement.  KAYAK is a multinational corporation with its own legal

17   department (SDG No. 178), and thus would have been aware of copyright laws.

18   *Propet*, 2007 WL 4376201, at *4.  KAYAK was further aware that EVOX had

19   copyrights in its Photographs, as is evident from the language of the Agreement,

20   including the provision that expressly informed KAYAK that it needed to provide

21   copyright attribution in connection with its use of each image.  SGD No. 179; *see*

22   *Propet*, 2007 WL 4376201, at *4.  Thus, KAYAK knew, or had reason to know, that

23   displaying the Photographs on the mobile app *without* EVOX's CMI would induce,

---

24   [6] *See also Pacific Stock, Inc. v. Kona Kustom Tours LLC*, No. CIV. 14-00326 ACK-

25   RLP, 2014 WL 7338728, at *3 (D. Haw. Nov. 25, 2014) (comparison of
     "Copyrighted Works and screen shots from Defendants' website" showed that

26   "Defendants intentionally removed" plaintiff's CMI); *Tylor v. Smart Enter., Inc.*,

27   No. CIV. 13-00289 HG-RLP, 2013 WL 6843056, at *3, *5 (D. Haw. Dec. 26, 2013)

28   (same).

1  enable, facilitate or conceal its own infringement by distributing EVOX's

2  photographs outside of the license.  *See Propet*, 2007 WL 4376201, at *4.

3       KAYAK further argues that it "removed the copyright notice with EVOX's

4  express consent," with the understanding that KAYAK "could use [a] 'Page

5  Attribution'" to credit EVOX.  (Mot. at 22.)  KAYAK admits that the Photographs

6  "appeared on the mobile app without" the requisite attribution, but dismisses this as

7  merely an "unintended side effect of the expressly authorized removal."  (*Id.*)

8  KAYAK's attempt to excuse its display of the Photographs as "unintended" again

9  confuses the *mens rea* requirement.  KAYAK is liable under the DMCA so long as

10 it intentionally removed KAYAK's CMI.  *See Propet*, 2007 WL 4376201, at *3.

11 KAYAK's use of software for the specific purpose of removing the CMI was

12 indisputably intentional.  SGD No. 177.[7]

13       KAYAK's final argument that it did not intend for the CMI-less Photographs

14 to appear on its mobile applications without proper copyright attribution is relevant

15 to, if anything, the requirement that KAYAK have "know[n], or . . . [had]

16 reasonable grounds to know, that" its intentional removal of the CMI would

17 "induce, enable, facilitate, or conceal an infringement" of the federal copyright laws.

18 17 U.S.C. § 1202(b).  Even so construed, KAYAK's argument still fails as there is

19 no dispute that KAYAK understood that the ████████████████████████████

20 ████████████████████████████████████████████████████████████  SGD

21 No. 177.  KAYAK thus knew, or had reason to know, that its app would display the

---

[7] KAYAK's intentional removal of CMI distinguishes this case from those cited by
KAYAK.  *See Stevens v. Corelogic, Inc.*, No. 14-CV-1158-BAS-JLB, 2016 WL
4371549, at *5 (S.D. Cal. July 1, 2016) (no evidence that images ever had any CMI;
that defendant, as opposed to a third party using defendant's software, removed the
CMI; or that defendant intended for its software to remove CMI); *Kelly v. Arriba
Soft Corp.*, 77 F.Supp.2d 1116, 1122 (C.D. Cal. 1999), *rev'd in part on other
grounds*, 336 F.3d 811 (9th Cir. 2002) (removal of CMI was "unintended side
effect" of the fact that the defendant's search engine returned only thumbnails,
which did not contain CMI).

1  CMI-less Photographs and, consequently, knew or had reason to know that the

2  removal would induce, enable, facilitate or conceal an infringement.  17 U.S.C. §

3  1202(b).  Thus, KAYAK's request for summary judgment on EVOX's DMCA

4  claim should be denied.

5         **E.**       ***EVOX is Not Limited to Pursuing a Claim for One Infringement***

6         KAYAK argues that EVOX can claim only a single infringement, and thus a

7  single statutory damages award, because its individual photos were part of a

8  "compilation."  Mot. at 23; *see also* 17 U.S.C. § 504(c)(1).  Contrary to KAYAK's

9  assertion, EVOX's photos are not a single compilation.  "A 'compilation' is a work

10  formed by the collection and assembling of preexisting materials . . . that are

11  selected, coordinated, or arranged in such a way that the resulting work . . .

12  constitutes an original work."  17 U.S.C. § 101.  In the Ninth Circuit, courts seeking

13  to determine whether individual works are a compilation focus on whether the

14  individual works have "'independent economic value.'"  *Monge v. Maya*

15  *Magazines, Inc.*, 688 F.3d 1164, 1180 (9th Cir. 2012) (citation omitted) (holding

16  that individual wedding photos of famous couple were separate works because each

17  photo had independent value); *see also Alaska Stock, LLC v. Houghton Mifflin*

18  *Harcourt Pub. Co.*, 747 F.3d 673, 685 (9th Cir. 2014)(registration of collection of

19  images registers both the collection and the individual images).

20         KAYAK argues that EVOX's front ¾ photographs were a compilation

21  because they were licensed to KAYAK as a group (Mot. at 23), but the fact that

22  EVOX's photographs can be licensed as a group does not mean they do not have

23  "independent economic value."  Indeed, while EVOX allows customers to license

24  certain categories of photos as a group, it also licenses individual images.  SGD No.

25  180.  EVOX's individual licensing is lucrative.  Each license costs several hundred

26  dollars, and EVOX's sales of individual licenses are expected to generate nearly

27  10% of its in revenue in 2016.  *Id*.  Thus, EVOX's photographs have "independent

28  economic value" and EVOX's claims should not be limited to a single infringement.

1  *See Playboy Enters. Inc. v. Sanfilippo*, No. 97-0670-IEG (LSP), 1998 WL 207856,

2  at *5 (S.D. Cal. Mar. 25, 1998) (photos in magazine had independent economic

3  value and were not a compilation).

4       KAYAK cites a number of out-of-circuit for the proposition that EVOX's

5  photos constitute a compilation, but none is availing. *See* Mot. at 23.  The court in

6  *Yellow Pages Photos, Inc. v. Ziplocal, LP* held that individual photos were not

7  independently economically valuable because the evidence showed that the photos,

8  organized into 178 topic-based collections, were marketed and "almost exclusively

9  distributed [ ] as collections."  795 F.3d 1255, 1278 (11th Cir. 2015).   EVOX

10  markets and frequently sells individual photos.  *Bryant v. Media Right Prods., Inc.* is

11  also unavailing, as the court there rejected the independent economic value test

12  adopted by the Ninth Circuit.  603 F.3d 135, 142 (2d Cir. 2010).  *Bryant* is also

13  distinguishable as it involved musical albums, which easily qualify as compilations.

14  *Id.* at 140-41 (recognizing that albums are "collection[s] of . . . songs . . . that are

15  selected and arranged by the author in a way that results in an original work of

16  authorship").  *Xoom, Inc. v. Imageline, Inc.* is similarly inapposite, because the

17  Court did not apply the independent value test and, even if it had, it is unlikely the

18  clip art images at issue had independent value.  323 F.3d 279, 285 (4th Cir. 2003),

19  *abrogated by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 160 n.2 (2010).

20       Because the Photographs have independent economic value, they are not a

21  compilation and EVOX is not limited to one statutory damages award.  *See Playboy*

22  1998 WL 207856, at *5.[8]

23       **F.**    **EVOX's Claims Are Not Limited to the Five Example Photos**

24       According to KAYAK, EVOX's claims should be limited to the five

25  photographs discussed in EVOX's response to Interrogatory No. 2, which asked

---

[8] KAYAK also argues, without citation, that the Photographs constitute a compilation because they embody the same "original elements."  Even if true, this does not demonstrate that the photos were not independently economically valuable.

1   EVOX to identify each element in its photographs it contends is original.  KAYAK

2   complains that EVOX focused on only five photographs and did not thoroughly

3   detail the original elements of every one of the thousands of photographs KAYAK

4   infringed.  Mot. at 23-24; *id.* (citing Fed. R. Civ. Proc. 37(c)(1)).  This argument

5   wholly ignores the Court's prior rulings with respect to Interrogatory No. 2.

6           KAYAK filed a motion to compel in which it argued that EVOX should be

7   required to supplement its response to Interrogatory No. 2 to identify the original

8   elements of each one of the Photographs at issue.  SGD No. 181.  EVOX responded

9   that providing this information for hundreds or thousands of photos would be

10  needlessly and unreasonably duplicative.  *Id.*  The Court agreed and held that

11  KAYAK could select five example photographs from the hundreds at issue and

12  EVOX must then identify the original elements of those photographs.  *Id.* at No.

13  182.  The Court instructed KAYAK that it could "renew its motion as to the other

14  photographs upon a showing that the five photographs are insufficient."  *Id.*

15  KAYAK *never* renewed its motion as to this issue, nor has it explained why

16  EVOX's identification of the original elements in the five example photographs was

17  insufficient.  *Id.*  Consequently, KAYAK's argument that EVOX should be

18  sanctioned and limited to the five example photographs must be rejected.

19  **IV.   CONCLUSION**

20          For all the foregoing reasons, KAYAK's Motion should be denied.

21

22  DATED:  December 16, 2016          CALDWELL LESLIE & PROCTOR, PC

23

24

25                                     By _____ /s/ Robyn C. Crowther _____

26                                        ROBYN C. CROWTHER
                                          Attorneys for EVOX Productions, LLC

27

28