1  CALDWELL LESLIE & PROCTOR, PC
   ROBYN C. CROWTHER, State Bar No. 193840
2    crowther@caldwell-leslie.com
   CRAIG H. BESSENGER, State Bar No. 245787
3    bessenger@caldwell-leslie.com
   CAMERON J. JOHNSON, State Bar No. 266729
4    cjohnson@caldwell-leslie.com
   725 South Figueroa Street, 31st Floor
5  Los Angeles, California 90017-5524
   Telephone: (213) 629-9040
6  Facsimile: (213) 629-9022

7  Attorneys for EVOX Productions LLC

8

9            **UNITED STATES DISTRICT COURT**

10      **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

11

12  EVOX PRODUCTIONS LLC, a          | Case No. CV15-05053-PSG (AGR)
    Delaware limited liability company,
13                                    | **EVOX PRODUCTIONS, LLC'S**
              Plaintiff,              | **OPPOSITION TO KAYAK**
14                                    | **SOFTWARE CORPORATION'S**
         v.                           | **MOTION IN LIMINE TO**
15                                    | **EXCLUDE TESTIMONY OF**
    KAYAK SOFTWARE              | **PROFESSOR JEFFREY SEDLIK**
16  CORPORATION, a Delaware
    corporation; and DOES 1-10,,      | **[REDACTED]**
17
              Defendants.            | **[Declaration of Craig H. Bessenger**
18  _____   | **filed concurrently herewith]**

19  KAYAK SOFTWARE              | The Honorable Philip S. Gutierrez
    CORPORATION, a Delaware
20  corporation,                      | Date:    January 31, 2017
                                      | Time:    9:00 a.m.
21            Counterclaimant,        | Crtrm.:  6A

22       v.

23  EVOX PRODUCTIONS LLC., a         | Trial Date:     January 31, 2017
    Delaware limited liability company,
24
              Counterdefendant.
25  _____

26

27

28

CALDWELL
LESLIE &
PROCTOR

# **TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................................... 1

II.   THERE IS NO PROPER BASIS TO EXCLUDE PROFESSOR SEDLIK'S TESTIMONY ..................................................................... 1

      A.   Professor Sedlik is a Preeminent Expert Who is Fully Qualified to Offer His Opinions ................................................................. 2

      B.   Professor Sedlik's Opinions Regarding the Parties' Agreement Are Relevant and Admissible ................................................... 3

           1.   KAYAK's Attacks on Professor Sedlik and Its Misrepresentations of His Opinions Are Inappropriate and Fail to Provide a Basis to Exclude His Testimony ...................... 6

           2.   Professor Sedlik Correctly States That the Agreement Repeatedly Acknowledges the Photographs Are Copyrighted ........................................................................ 9

           3.   Professor Sedlik's Opinions Concerning the Term "Portal Website" in the Agreement Are Reliable and Relevant ............ 10

           4.   Professor Sedlik's Opinions Do Not Evince "Bias" ................. 12

      C.   Professor Sedlik's Opinions Regarding the Photographs Are Relevant and Will Aid the Trier of Fact ................................. 14

      D.   Professor Sedlik's Opinions Are Proper Rebuttal ........................... 18

           1.   Professor Sedlik's Opinions on Different Licensing Models Is Proper Rebuttal ..................................................... 19

           2.   Professor Sedlik's Opinions Distinguishing Mobile Applications from a Website Is Proper Rebuttal ...................... 20

           3.   Professor Sedlik's Opinions on the Photographs, and EVOX's Creative Decisions in Producing the Photographs, Are Proper Rebuttal ............................................................ 21

III.  CONCLUSION .................................................................................... 22

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Balfour, Guthrie & Co., Ltd. v. Gourmet Farms,*
    108 Cal.App.3d 181 (1980) ................................................................. 4, 6

*Burke v. TransAm Trucking, Inc.,*
    617 F.Supp.2d 327 (M.D. Pa. 2009) ....................................................... 9

*Daubert v. Merrell Dow Pharms., Inc.,*
    509 U.S. 579 (1993) .............................................................. 1, 2, 5, 12

*Ets-Hokin v. Skyy Spirits, Inc.,*
    225 F.3d 1068 (2003) ....................................................................... 15

*EVOX Productions, LLC v. California Rent-A-Car, Inc.,*
    No. 2:15-CV-08046-MWF, ECF No. 51 (C.D. Cal. July 26, 2016) ............ *passim*

*Floorgraphics, Inc. v. News Am. Mktg. In-Store Servs., Inc.,*
    546 F.Supp.2d 155 (D.N.J. 2008) ...................................................... 9, 12

*Kumho Tire Co. v. Carmichael,*
    526 U.S. 137 (1999) ......................................................................... 2, 5

*Meshworks, Inc. v. Toyota Motor Sales U.S.A.,*
    528 F.3d 1258 (10th Cir. 2008) ........................................................... 18

*Negrete v. Allianz Life Ins. Co. of N. Am.,*
    No. CV 05-6838 CAS, 2013 WL 6535164 (C.D. Cal. Dec. 9, 2013) ............... 19

*PM Grp., Inc. v. Stewart,*
    154 Cal.App. 4th 55 (2007) .................................................................. 4

*Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.,*
    944 F.2d 597 (9th Cir. 1991) ............................................................... 19

*United States v. Finley,*
    301 F.3d 1000 (9th Cir. 2002) ............................................................... 2

**Statutes**

Advisory Committee's Notes to Rule 702 of the Fed. Rule of Evid. ...................... 2

Fed. R. Civ. Proc. 26(a)(2)(D)........................................................18, 20, 21

Fed. R. Civ. Proc. 37(c) ....................................................................19

CALDWELL
LESLIE &
PROCTOR

## I.     INTRODUCTION

Defendant and Counterclaimant KAYAK Software Corporation ("KAYAK") has moved to exclude the testimony of rebuttal expert witness Professor Jeffrey Sedlik, who Plaintiff and Counterdefendant EVOX Productions, LLC ("EVOX") designated to respond to the opinions of KAYAK expert witness Gary Elsner. KAYAK's motion is devoid of relevant legal authority and consists instead of a rehash of KAYAK's substantive arguments and a rambling litany of disagreements with Professor Sedlik's conclusions (or his purported conclusions, which KAYAK repeatedly misrepresents).  A proper *Daubert* inquiry, of course, must be focused on the expert's "principles and methodology" and "not on the conclusions that they generate."  *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993).  There is no proper legal basis to exclude Professor Sedlik's testimony, as he is a preeminent figure in his field whose testimony is reliable and will assist the trier of fact in this case.  KAYAK's motion should be denied.

## II.    THERE IS NO PROPER BASIS TO EXCLUDE PROFESSOR SEDLIK'S TESTIMONY

Wholesale exclusion of expert witness testimony is inappropriate absent unusual circumstances, which are not present here.  Professor Sedlik's rebuttal report responds to the report of KAYAK expert witness Gary Elsner, who opined on the parties' license agreement (the "Agreement") and on the copyrightability of EVOX's Photographs at issue in this case (the "Photographs").  Professor Sedlik's opinions on the Agreement and the Photographs are proper rebuttal, are relevant and reliable, and should not be excluded.  To the extent KAYAK disputes Professor Sedlik's opinions, it will be free to cross-examine him at trial, which is the appropriate means of assessing the strength or weakness of testimony.

As the Supreme Court held in *Daubert*:

> Vigorous cross-examination, presentation of contrary
> evidence, and careful instruction on the burden of proof

CALDWELL
LESLIE &
PROCTOR

-1-

are the traditional and appropriate means of attacking

shaky but admissible evidence.  Additionally, in the event

that the trial court concludes that the scintilla of evidence

presented supporting a position is insufficient to allow a

reasonable juror to conclude that the position more likely

than not is true, the court remains free to direct a judgment

. . . .  These conventional devices, rather than wholesale

exclusion . . . are the appropriate safeguards where the

basis of [expert] testimony meets the standards of Rule

702.

509 U.S. at 596 (internal citations omitted); *see also* Advisory Committee's Notes to Rule 702 of the Federal Rules of Evidence ("A review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule. *Daubert* did not work a 'sea change over federal evidence law,' and 'the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system.'") *quoting United States v. 14.38 Acres of Land Situated in Leflore County, Miss.*, 80 F.3d 1074, 1078 (5th Cir. 1996)); *United States v. Finley*, 301 F.3d 1000, 1014-16 (9th Cir. 2002) (Cross-examination is the appropriate means to test an expert's opinion and "a jury is free to reject [an expert's] testimony."); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 142 (1999) ("[T]he law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination.") (emphasis in original).

### A.     *Professor Sedlik is a Preeminent Expert Who is Fully Qualified to Offer His Opinions*

Professor Sedlik's extensive experience and qualifications are set forth in his report.  (Declaration of Craig H. Bessenger ("Bessenger Decl."), ¶ 5, Ex. C (Sedlik Report at 1-4).)  In summary, Professor Sedlik has been an internationally recognized advertising photographer for more than 30 years.  (*Id.* at 1.)  Professor

Sedlik's practical experience also extends to serving as the project manager in projects involving development, operation, and maintenance of web sites, web applications, and other applications.  (*Id.*)

He is regularly invited by the United States Copyright Office to speak to its employees, and teaches seminars to the Visual Arts Examining Section of the Copyright Office on original expression and authorship in photography.  (*Id.* at 4.) He has also assisted the Copyright Office with drafting legislation and regulations applying to copyright registration.  (*Id.*)  For more than 25 years, he has held high-level positions in trade associations and standard-setting bodies in the photography, advertising, product marketing, technology and design industries.  (*Id.* at 1.)  As an example, he is the past National President of the Advertising Photographers of America, which is the leading trade association for commercial photographers in the United States.  (*Id.* at 2.)  Professor Sedlik currently serves as the President and CEO of the PLUS Coalition, which is a non-profit, international standards body and trade association representing industries involved in the creation and licensing of photography and illustration.  (*Id.* at 1-2.)  The PLUS Coalition develops and maintains standards for use by licensees and licensors in transactions involving photography and illustration.  (*Id.*)

It is not an overstatement to say that Professor Sedlik is one of the most qualified individuals in the country—and likely the *most* qualified—to render opinions on the subjects at issue in this case.

> **B.      Professor Sedlik's Opinions Regarding the Parties' Agreement Are Relevant and Admissible**

Professor Sedlik's rebuttal opinions regarding the Agreement are straightforward.  (*See* Bessenger Decl., Ex. C (Sedlik Report at 14-27).)  At the outset, he states that he █████████████████████████████

1   ███████████████ (*Id.* at 14.)  Professor Sedlik notes that KAYAK

2   ██████████████████████████████████████████

3   ██████████████████████████████████████████

4   ████████████████████████████████████████

5   ████████████████████████████████████████

6   ██████████████████████████████████████████

7   █████████████ (*Id.* at 15.)

8       Professor Sedlik then opines, in part, that he disagrees with KAYAK's ████

9   ███████████████████████████████████████

10  ███████████████████████████████████████

11  ███████████████████████████████████████

12  █████████████████████████████████████████ (*Id.*)

13  Professor Sedlik also specifically disagrees with Mr. Elsner's opinion that ██████

14  ████████████████████████████████████████

15  ████████████████████████████████████ *Id.* at 20.

16  Instead, ███████████████████████████████████

17  ███████████████████████████████████████

18  █████████████████████████████████████████

19  █████████████████████████████████████ (*Id.*)

20      This is entirely appropriate and relevant expert testimony.[1]  *See, e.g., Balfour,*

21  *Guthrie & Co., Ltd. v. Gourmet Farms*, 108 Cal.App.3d 181, 190 (1980) ("The trial

22  court properly admitted the expert's evidence of custom and usage to explain and

23  supplement the pricing term of the contract."); *PM Grp., Inc. v. Stewart*, 154

24  _____

25  [1] Indeed, KAYAK faults Professor Sedlik because his report is "unsupported by any
    legal analysis or citation of any rules of contract construction" (Mot. at 5) and he

26  "fails even to mention any guiding principles of contract interpretation."  (*Id.* at 7.)

27  This criticism is nonsensical given that Professor Sedlik is not a lawyer, and is not
    offering a legal analysis of the Agreement.

28

CALDWELL
LESLIE &
PROCTOR

Cal.App. 4th 55, 62-63 (2007) (Trial court did not err in admitting expert witness testimony regarding contract at issue, including "defined legal terms," because "[t]he record reveals Sloane's testimony related primarily to the customs and practices of the entertainment industry, specifically, the music concert business. Because these customs and practices are sufficiently beyond common experience, Sloane's expert opinion was admissible to assist the trier of fact.").

Despite the evident admissibility of Professor Sedlik's opinions regarding the Agreement, KAYAK argues that Professor Sedlik's opinions are "irrelevant and misleading" and should be excluded on that basis. (Mot. at 3.) With the exception of cursory citations to the standards set forth in *Daubert* and *Kumho Tire Co.* (*id.* at 2-3), however, KAYAK fails to include any relevant case law addressing the exclusion of supposedly "irrelevant and misleading" expert testimony. (*See id.* at 3-10.) Indeed, KAYAK cites only three cases in the section of its brief arguing that Professor Sedlik's testimony is "irrelevant and misleading" and each of the three cases discusses only whether an expert can testify outside his area of expertise. (*Id.* at 3.) KAYAK argues that because Professor Sedlik "is not a lawyer and has identified no qualifications that would permit him to opine on the meaning of the parties' Agreement." (*Id.*) This argument misunderstands the permissible use of expert testimony and is simply wrong with respect to Professor Sedlik's qualifications.

As described above, Professor Sedlik is clearly qualified to opine on the matters in his report. (*See also* Bessenger Decl., ¶ 6, Ex. D (Sedlik Depo. at 6:15-25:10) (discussing Professor Sedlik's training, experience, and qualifications); *id.*, Ex. C (Sedlik Report at 1-4) (same), ¶ V.D. ████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████
██████████████████████████

1    Moreover, Professor Sedlik need not be a lawyer to proffer his opinions here.

2   As Professor Sedlik noted during his deposition, "[T]he Court does not necessarily

3   understand how the image licensing industry works or how other industries work in

4   detail, and I'm here as a subject matter expert to help the Court to understand how

5   business [is] transacted because some of the understanding of the agreement

6   between the parties would likely be based on how business [is] normally transacted

7   between parties." (*Id*., Ex. D (Sedlik Depo. at 80:18-81:3).) *See Balfour, Guthrie &*

8   *Co., Ltd.*, 108 Cal.App.3d at 190 (trial court properly admitted expert testimony

9   concerning custom and usage to explain term of contract).

10              **1.    KAYAK's Attacks on Professor Sedlik and Its**

11                     **Misrepresentations of His Opinions Are Inappropriate and**

12                     **Fail to Provide a Basis to Exclude His Testimony**

13    Lacking relevant legal authority, KAYAK's motion lapses into *ad hominem*

14   attacks and misrepresentations of Professor Sedlik's opinions.  This is in keeping

15   with KAYAK's conduct at Professor Sedlik's deposition:

16              Q:  Read me the words, sir.

17              Mr. Bessenger:  Jonathan.

18              Mr. Moskin:  And don't interrupt.

19              Mr. Bessenger:  Jonathan, I'm going to interrupt because

20              you are being inappropriate with this witness, you're

21              raising your voice, you're arguing with him, you're using

22              an inappropriate tone.  It's not professional.

23              Mr. Moskin:  What's not professional is that the witness

24              refused to answer the question.

25              Mr. Bessenger:  Jonathan, I don't – he has answered your

26              question multiple times.

27              Mr. Moskin:  No, he has refused to answer this and any

28              other question that actually matters repeatedly.

1          Q:  So please read me the words . . . .

2          Mr. Bessenger:  Objection, asked and answered,

3          argumentative.  Go ahead.

4          The Witness:  So for the record, you are yelling at me in a

5          raised tone of voice and it doesn't phase me at all,

6          Counselor.

7          By Mr. Moskin:  I'm not yelling at you.

8          The Witness: I'm answering to you in a lowered voice.

9          Q:  I dispute that.

10         A:  I'm speaking in a calm manner with my voice, not

11         raising any—I'm not being defiant, I'm doing my best to

12         answer your question, and it's just not what you want to

13         hear.  The record will show that I have responded in full to

14         your questions, but that the answers might not be

15         consistent with your understanding."

16  (Bessenger Decl., Ex. D (Sedlik Depo. at 79:2-80:18; *see also id.* at 63:1-63:25).)

17         Throughout the deposition, KAYAK attempted to bully Professor Sedlik into

18  agreeing with KAYAK's own assertion that, "You [Professor Sedlik] know better

19  than KAYAK what it thought it was agreeing to," (*see, e.g., id.* at 155:6-9, 155:12-

20  13, 157:1-2, 158:18-20, 159:10-11, 166:12-13, 167:14), and refused to accept

21  Professor Sedlik's consistent assertions that he "did not testify that I know better

22  than KAYAK.  I testified that I'm judging what the parties believed by their

23  behavior . . . ."  (*Id.* at 167:22-24.)  KAYAK also referred to Professor Sedlik and

24  his testimony as "laughable," "insane," "embarrassing," and "terrible" during the

25  deposition.  (*Id.* at 157:7, 166:21-23, 167:6; *see also id.* at 154:17-18 ("Q: Well,

26  then just answer the question for God's sake."), 156:22 ("Q: Well, then you can just

27  answer the question for God's sake . . . .").)

28

1    KAYAK's false accusation that Professor Sedlik believes he "knows better

2  than" other parties has carried over to its motion, where it is repeated at least nine

3  times in the course of as many pages.  (*See* Mot. at 2:2, 5:4, 6:17-18, 7:12-13, 7:14,

4  8:17-18, 8:24, 9:1, 9:5.)  This gross distortion of Professor Sedlik's opinions is

5  consistently refuted by Professor Sedlik's own deposition testimony:

6        A:  All that I can address, because I can't read KAYAK's

7            mind, I can only judge them by their behavior.  And for

8            the record, I never earlier said yes when you asked if I

9            thought I knew better what Kayak wanted.

10       Q:  You're right.

11       A:  You mischaracterized my testimony indicating that I

12           answered yes when I never answered yes.  I said that I

13           judge them by the agreement that they entered and by the

14           testimony and documents and materials in this matter

15           including their communications with the licensor [EVOX]

16           as to what they wanted.  All that I see is they sought out a

17           license for web use, agreed to one that clearly defines – it

18           didn't leave it undefined, it didn't just say a portal use.  It

19           said portal means website and then it licensed them the

20           right to use it on that website.

21  (Bessenger Decl., Ex. D (Sedlik Depo. at 171:23-172:15).)

22       KAYAK's efforts to misrepresent Professor Sedlik's clear articulation of his

23  opinions is telling, as the remainder of KAYAK's arguments in support of excluding

24  Professor Sedlik's opinions, set forth below, are equally unavailing.  KAYAK

25  merely disputes Professor Sedlik's conclusions, or argues he should have considered

26  or given more weight to particular evidence.  (*See, e.g.*, Mot. at 6-7 (criticizing

27  Professor Sedlik for "not reconc[iling] his views" with other witnesses and

28  purportedly not analyzing other contracts).)  This is not a proper basis to exclude

CALDWELL
LESLIE &
PROCTOR

-8-

1  expert testimony.  *See, e.g., Floorgraphics, Inc. v. News Am. Mktg. In-Store Servs.,*

2  *Inc.*, 546 F.Supp.2d 155, 171-73 (D.N.J. 2008) (Denying defendants' effort to

3  exclude expert witness based in part on argument that the expert had "failed to take

4  into account other factors that could have affected" expert's conclusion, and finding

5  that "[a]t most, assuming all of Defendants' objections are material and valid, [the

6  expert's] testimony can be critiqued by another expert, not stricken."); *Burke v.*

7  *TransAm Trucking, Inc.*, 617 F.Supp.2d 327, 335 (M.D. Pa. 2009) ("Defendants'

8  arguments and criticisms of Dr. Ziejewski's methodology and inputs used went more

9  to the weight of the evidence, rather than to his ability to testify as an expert in this

10  case.  Mere weakness in the factual basis of an opinion bears on the weight of the

11  evidence, not its admissibility.").

12          **2.      Professor Sedlik Correctly States That the Agreement**

13                  **Repeatedly Acknowledges the Photographs Are Copyrighted**

14          KAYAK claims that Professor Sedlik is mistaken in asserting that the

15  Agreement asserts that the Photographs are copyrighted and that KAYAK

16  acknowledged as much by entering into the Agreement.  (Mot. at 3; Bessenger

17  Decl., Ex. C (Sedlik Report, ¶ D at 18-20).)  In fact, the text of the Agreement fully

18  supports Professor Sedlik's assertion.  As but one example, under "OWNERSHIP

19  OF LICENSED MATERIALS," the Agreement states, "9.1. Title—EVOX

20  represents, warrants and asserts that it owns and has all U.S. copyrights to the

21  Licensed Materials . . . ."  KAYAK entered into the Agreement, which by definition

22  means it is agreeing to be bound by its terms, and even expressly acknowledged at

23  Appendix 1, 19.10 that it has "thoroughly reviewed this Agreement and bargained

24  for the terms herein."  KAYAK further agreed that it would not "claim any right to

25  use [EVOX's intellectual property] except as expressly permitted by this

26  Agreement," which is exactly what it has done and continues to do.  (Bessenger

27

28

CALDWELL
LESLIE &
PROCTOR

-9-

1    Decl., ¶ 17, Ex. L  at App'x 1, ¶ 9.2.[2])  Professor Sedlik's discussion of the

2    Agreement on this point is neither "argumentative" nor "mistaken."  (Mot. at 4.)

3              **3.      Professor Sedlik's Opinions Concerning the Term "Portal**

4                        **Website" in the Agreement Are Reliable and Relevant**

5              KAYAK continues its effort to simply ignore Professor Sedlik's actual

6    opinions and testimony by claiming that he "agreed . . . that 'portal' has no meaning

7    . . . ."  (Mot. at 5.)  This is false.  In his report, Professor Sedlik concludes that ████

8    ████████████████████████████████████████████████████████████████████████

9    ████████████████████████████████████████     (Bessenger Decl., Ex. C (Sedlik

10   Report at 22).)  This directly rebuts the opinion of KAYAK's expert, Mr. Elsner.  In

11   support of this definition Professor Sedlik cites to the PLUS Image Licensing

12   Glossary compiled by the PLUS Coalition, a non-profit which is the standards body

13   for the image licensing industries.  (*Id.* at 20-21.)

14             Although Professor Sedlik is the President and CEO of the PLUS Coalition—

15   a reflection of his stature in the image licensing field—the Image Licensing

16   Glossary is not "his own dictionary," as KAYAK would have it.  (Mot. at 6.)

17   Rather, the "definitions were developed in an open process, with participation by

18   over 1500 committee members in 34 countries, representing all industries."  (*Id.*)

19   The entire purpose of the Glossary is to ████████████████████████████████

20   ████████████████████████████████████████████████████████████████████████

21   ████████████████████████     (Bessenger Decl., Ex. C (Sedlik Report at 21.)

22   Indeed, the definition of "portal" in the Image Licensing Glossary *was actually*

23   *formulated and submitted by KAYAK's own expert*, Gary Elsner, who now opines on

24

25

26   ────────────────────

27   [2]  Amazingly, KAYAK even admits that "it makes no difference to KAYAK whether
     the images are protected by copyright" (Mot. at 5), which may explain KAYAK's

28   cavalier violations of the Agreement and EVOX's intellectual property rights.

behal of KAYAK that "portal" is not an accepted term in the image licensing context.[3]  (*Id.* at 21-22).)

Professor Sedlik further testified, in reference to the Agreement, "In 1.18, reading directly from Exhibit 18, it says portal, in quotes, means a website, and then it goes on to carve out certain types of websites, *but portal clearly means a website within this agreement*."  (*Id.*, Ex. D (Sedlik Depo. at 98:13-14).)  After KAYAK nonetheless asks, "Q: Then what does portal mean in this agreement as you understand it as applied to KAYAK?", Professor Sedlik again states, "Portal means a website, and I don't know how much more clear that could be to both parties." (*Id.* at 99:8-10.)  KAYAK points to Paragraph 6 of the Agreement, which expressly limits the use of the Photographs to "a single Portal Website," which Professor Sedlik agrees could be read as redundant in light of the Agreement's definition of "Portal" as a type of website.  (Mot. at 5; Bessenger Decl., Ex. D (Sedlik Depo. at 102:4-24).)  But even so, this does not render the definition of Portal in the Agreement "meaningless," as KAYAK claims, nor does it expand the Agreement's scope of use beyond a "website."  And there is no reasonable reading or interpretation of "website" that would include "mobile application," and thereby authorize KAYAK's use of the Photographs in this case.

KAYAK also faults Professor Sedlik for purportedly failing to cite or analyze other license agreements that use the term "portal" or "portal website."  (Mot. at 6.) But as Professor Sedlik testified at his deposition:

> I had no need to cite to a specific past individual
> agreement.  My experience spans thousands of such

---

[3] KAYAK attempts to undermine its own expert's definition in the Image Licensing Glossary of "portal" meaning a website—and explain away the glaring fact that it does not mention mobile applications—by pointing out that the definition has not been revised since 2006, prior to the emergence of mobile applications in 2008. (Mot. at 6-7.)  In doing so, KAYAK ignores the most obvious reason the definition has not been revised: nobody understands a website to mean a mobile application.

1         agreements and phrases and conditions in licensing

2         agreements, for example, stating that the usage is limited

3         to use on a single website and that a portal means a

4         website.  I'm involved in this matter to help the Court and

5         the parties to understand . . . the meaning of those terms in

6         the context of a copyright license agreement like this one.

7   (Bessenger Decl., Ex. D (Sedlik Depo. at 144:18-145:3.)  Indeed, this is also

8   completely consistent with EVOX's license agreements that actually do authorize

9   use on mobile applications.  These agreements provide for use on "a single Portal

10  Website" and expressly provide for a separate use on a "single downloadable mobile

11  application."  (*Id*.,. ¶ 17, Ex. L.)

12        As with the rest of KAYAK's complaints, whether or not Professor Sedlik

13  cites to other specific licensing agreements is not a basis to *exclude* Professor

14  Sedlik's testimony, nor does KAYAK cite any authority that would support that

15  proposition.  It is, at most, a possible basis for KAYAK to cross-examine Professor

16  Sedlik at trial.  *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination,

17  presentation of contrary evidence, and careful instruction on the burden of proof are

18  the traditional and appropriate means" of challenging expert testimony.);

19  *Floorgraphics, Inc.*, 546 F.Supp.2d at 171-73 (failing to take into account factors

20  that could have affected expert's conclusion are not a basis to exclude expert

21  witness).

22      **4.**    **Professor Sedlik's Opinions Do Not Evince "Bias"**

23        According to KAYAK, Professor Sedlik is "biased," apparently because he

24  interprets certain evidence differently from KAYAK.  As an example, KAYAK

25  claims that Professor Sedlik "demonstrat[es] his bias," because he asserts in his

26  report that, "Kayak informed Evox that it was only interested in using the Licensed

27  Photographs on KAYAK.com."  (Mot. at 9.)  KAYAK goes so far as to claim that

28  "there is no record of any such communication in this case . . . ."  (*Id.*)  KAYAK's

denial is contradicted by the evidence.  At the outset of the parties' negotiations, EVOX employee Nena Addison emailed KAYAK employee Lauren Fulton, who had contacted EVOX about licensing its photographs and who handled all negotiations with EVOX.  (EVOX Statement of Genuine Disputes Nos. 11-12 (ECF No. 85).)  As part of her inquiry about KAYAK's requirements, Ms. Addison asked, "And our content would only be used on the one website www. kayak.com, correct?"  (*Id.*)  Ms. Fulton responded, "We have a few affiliate websites in which we power their search.  Your images would also appear on these websites."  (*Id.*)  Ms. Fulton thereby confirmed that KAYAK intended to use EVOX's Photographs only on its website and perhaps "affiliate websites," which KAYAK never identified.  Ms. Fulton made no mention at all of mobile applications.  (*Id.*)

KAYAK further claims that Professor Sedlik's purported bias is "made manifest" because he disagrees with KAYAK's proffered definitions of such terms as "website."  KAYAK even asserts that "there is not even a dispute in the case" regarding what "website" means. (Mot. at 9.)  Again, this is directly contradicted by the evidence in the case, including the testimony of KAYAK witnesses, and KAYAK's own arguments.  KAYAK's primary defense in this case is its claim that the term "website" somehow includes within its meaning KAYAK's mobile applications.  KAYAK argued in its Motion for Summary Judgment, for example, that it "believes its website is fairly considered a portal to other content that is part of its travel service, including the mobile app."  (KAYAK's Motion for Summary Judgment at 5 (ECF No. 57).)  KAYAK even expressly claimed that the term Portal Website as used in the Agreement "is broad enough to include KAYAK's mobile app."  (*Id.*)  KAYAK employee Lauren Fulton, who negotiated the terms of the Agreement with EVOX, actually testified at her deposition that she refers to KAYAK's mobile application as "the website."  (Bessenger Decl., ¶ 16, Ex. K (Fulton Depo. at 41:20-25; *see also id.* 45:14-17 ("Q: [I]t's your testimony that when [EVOX employee John Brosnan] wrote 'research port[al] (website),' you

1  understood that to include KAYAK's mobile application?  A: Yes."); 43:3-11

2  (Fulton testified that she understood EVOX's references to "site" during the parties'

3  negotiations to refer to KAYAK's mobile application).)

4          Unless KAYAK is now conceding liability in this case, there is plainly a

5  dispute about what "website" means.  From prior to the inception of this litigation

6  through the filing of its Motion for Summary Judgment, KAYAK has argued – in

7  the face of common sense and the plain language of the Agreement – that the term

8  "website" somehow includes within its meaning "KAYAK's mobile application."

9  That Professor Sedlik fails to agree with this outlandish assertion does not

10  demonstrate "bias" of any kind, let alone provide a basis to exclude Professor

11  Sedlik's testimony from trial.

12          In sum, KAYAK has failed to identify any basis to exclude Professor Sedlik's

13  opinions relating to the parties' Agreement.

14  **C.    *Professor Sedlik's Opinions Regarding the Photographs Are Relevant***

15  ***and Will Aid the Trier of Fact***

16          According to KAYAK, Professor Sedlik's opinions regarding the

17  Photographs are "irrelevant" and should be excluded.  (Mot. at 11.)  KAYAK argues

18  that Professor Sedlik did not identify specific EVOX Photographs that he reviewed

19  in preparing his report, did not identify "any expression in any such photographs

20  that might support a finding of copyrightability," did not consider whether "those

21  elements are original or nonfunctional," and did not consider other photographs that

22  are purportedly "indistinguishable" from EVOX's own works.  (*Id*. at 13.)  KAYAK

23  also faults Professor Sedlik for repeating his analysis of EVOX's creative

24  expression from a report that Professor Sedlik recently prepared for EVOX in *EVOX*

25  *Productions, LLC v. California Rent-A-Car, Inc.* (CV 15-8046-MWF (RAOx), ECF

26  No. 51) ("*California Rent-A-Car*"), another copyright infringement case in the

27  Central District of California concerning EVOX's photographs.  (*Id.*)  All of

28

1    KAYAK's criticisms are meritless, and most have already been analyzed and

2    dismissed in *California Rent-A-Car*.

3         As it has throughout the case, KAYAK confuses (or perhaps intentionally

4    obfuscates) relevant principles of copyright law and, as a result, misrepresents

5    Professor Sedlik's opinions regarding the Photographs.[4]   As the Court in *California*

6    *Rent-A-Car* correctly held, "In assessing the 'creative spark' of a photograph, the

7    Ninth Circuit explained, '**almost any[ ] photograph may claim the necessary**

8    **originality to support a copyright merely by virtue of the photographers'**

9    **personal choice of subject matter, angle of photograph, lighting, and**

10   **determination of the precise time when the photograph is to be taken**.'

11   (Bessenger Decl., ¶ 18, Ex. M (*California Rent-A-Car, Inc.* at 14) *quoting Ets-Hokin*

12   *v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1076 (2003) (emphasis added)).

13        Accordingly, KAYAK's complaint that Professor Sedlik did not discuss the

14   specific creative expression manifested in particular individual photographs misses

15   the mark.  The distinction between creative choices and resulting protected

16   expression was recognized by the Ninth Circuit when the Court explained that

17   "decisions by the photographer—or, more precisely, the elements of photographs

18   that *result* from these decisions—are worthy of copyright protection."  *Ets-Hokin*,

19   225 F.3d at 1074-75.  Because the issue here is whether EVOX's photographs are

20   properly copyrightable—*not whether any protected expression therein was actually*

21   *copied, which KAYAK has already admitted to*—Professor Sedlik rightly focuses his

22   report on EVOX's creative decisions made in producing its works.

23        That said, Professor Sedlik did in fact review the Photographs for creative

24   expression resulting from EVOX's creative decisions.  Professor Sedlik testified that

25   he "reviewed a quantity of EVOX photographs and reviewed them for creative

---

[4] KAYAK's penchant for importing inapposite concepts from patent law, for example, is evident in its mistaken belief that Professor Sedlik should have analyzed "prior art."  (Mot. at 15.)

1  expression" and that his "opinions are based on analysis across multiple

2  photographs where it becomes very evident that there's a significant amount of

3  creative expression in the EVOX photographs of three-quarter front view

4  automobiles."  (Bessenger Decl., Ex. D (Sedlik Depo. at 213:13-23).)  His report

5  also specifically addresses the Photographs at issue here, which were created using

6  EVOX's "spin" process:

7  

8  

9  

10  

11  

12  

13  

14  

15  

16  

17  (*Id*., Ex. C (Sedlik Report at 41).)

18      This focus of Professor Sedlik's opinions is fully consistent with the Court's

19  approach in *California Rent-A-Car*, in which it held:

20          [T]he Court does not need to discuss the specifics to

21          conclude that the combination of creative choices Plaintiff

22          made in taking the Photographs meets the minimal degree

23          of creativity.  Here, Plaintiff is involved with the staging

24          and creation of the scenes depicted in the Photographs. . . .

25          Furthermore, Plaintiff's original expression can also be

26          found in the rendition of the subject-matter, that is, the

27          effect created by the combination of [Plaintiff's] choices

28  

CALDWELL
LESLIE &
PROCTOR

1  of perspective, angle, lighting, shading, focus, lens, and so

2  on.

3  (*Id.*, Ex. M (*California Rent-A-Car* at 14-15 (internal citations and quotation marks

4  omitted).)

5  KAYAK's claim that Professor Sedlik should have addressed whether

6  "elements" of the Photographs are "original or nonfunctional," and should have

7  analyzed purportedly similar photographs from third parties also misses the mark.

8  In fact, there was no need for Professor Sedlik to engage in any such analysis in his

9  report.  The Court in *California Rent-A-Car* also addressed this issue, "Defendants'

10  arguments that the Photographs lack originality because they use 'backgrounds that

11  are standard [and] traditional' and that the techniques use are 'standard or

12  unoriginal' also fail to grapple with the prevailing approach in the Ninth Circuit . . . .

13  **What matters here is not the novelty of the selected technique but the**

14  **consecutive creative choices emanating from [EVOX's] selection of a particular**

15  **technique from a field of other possible techniques**."  (*Id.* at 15 (emphasis

16  added).)  Professor Sedlik properly analyzes EVOX's creative choices at length in

17  his report.

18  Finally, there is no merit to KAYAK's criticism that Professor Sedlik's

19  opinions in his report in this matter and his report in the *California Rent-A-Car* case

20  are largely similar.  KAYAK's effort to portray this as a "gotcha" moment is

21  puzzling, given that Professor Sedlik's report in *California Rent-A-Car* was publicly

22  filed (as a declaration) in support of EVOX's motion for summary judgment in that

23  case, and that EVOX shared both the *California Rent-A-Car* opinion (cited above)

24  and Professor Sedlik's declaration with KAYAK *before* his deposition.  To state the

25  obvious, the fact that Professor Sedlik's analysis of EVOX's Photographs is largely

26  the same in the two reports only confirms the reliability and consistency of

27  Professor Sedlik's opinions.

28

CALDWELL
LESLIE &
PROCTOR

-17-

1    Nonetheless, KAYAK argues that the photographs at issue in the *California*
2    *Rent-A-Car* case are different from those at issue here, and so Professor Sedlik's
3    report in this case must somehow be inapplicable.  (Mot. at 13-14. )  As discussed
4    above, KAYAK's focus on individual photographs is misplaced.  In any event,
5    EVOX front ¾ view images actually were at issue in *California Rent-A-Car*.  (*See,*
6    *e.g.*, Declaration of Jonathan E. Moskin in Support of KAYAK's Opposition to
7    EVOX's Motion for Summary Judgment, Ex. 1 at 8, 32, 44, 47, 99, 145, 147 (ECF
8    No. 93-2).)  Moreover, this collection of photographs demonstrates how many
9    different images can be made of automobiles, and the creative decisions of angles,
10   poses, lighting and backgrounds, which reinforces the validity of EVOX's
11   copyrights.  KAYAK's argument that *California Rent-A-Car* is inapposite because it
12   involved different EVOX images is also inconsistent with KAYAK's arguments that
13   EVOX's images all reflect the same creative decisions and thus are non-
14   copyrightable.  If all of EVOX's images truly do reflect the same creative decisions,
15   then *California Rent-A-Car*'s holding that the images are copyrightable is directly
16   on point.

17   Professor Sedlik's opinions regarding the Photographs are highly relevant and
18   there is no basis to exclude them.[5]

19   **D.    *Professor Sedlik's Opinions Are Proper Rebuttal***

20   KAYAK fails to cite a single legal authority in its brief relating to the proper
21   scope of expert witness rebuttal testimony, and yet it argues that Professor Sedlik's
22   opinions are improper rebuttal because Professor Sedlik "does not actually respond
23   to or directly address what Mr. Elsner states."  (Mot. at 10.)

24

25   [5] KAYAK takes issue with Professor Sedlik's references to *Meshworks, Inc. v.*
26   *Toyota Motor Sales U.S.A.*, 528 F.3d 1258 (10th Cir. 2008).  Mr. Elsner expressly
     relied on and referenced *Meshworks* as a basis of his opinions, and so it was
27   appropriate for Professor Sedlik, as a rebuttal witness, to point out that Mr. Elsner's
28   assumptions regarding *Meshworks* (and therefore his resulting opinions) are flawed.

1    Rebuttal expert testimony is permitted if "the evidence is intended solely to
2    contradict or rebut evidence on the same subject matter identified by another party
3    . . . ."  Fed. R. Civ. Proc. 26(a)(2)(D).  "The district court has broad discretion in
4    deciding what constitutes proper rebuttal evidence.  The district court also has broad
5    discretion in admitting expert testimony and its decision will be sustained unless it is
6    manifestly erroneous."  *Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental,*
7    *Inc.*, 944 F.2d 597, 601 (9th Cir. 1991) (internal citations and quotation marks
8    omitted); *see also Negrete v. Allianz Life Ins. Co. of N. Am.*, No. CV 05-6838 CAS
9    (MANx), 2013 WL 6535164, at *26 (C.D. Cal. Dec. 9, 2013) (expert's testimony
10   was proper rebuttal testimony, and even if not, failure to disclose expert in initial
11   expert disclosures was "harmless" under Fed. R. Civ. Proc. 37(c), because defendant
12   had time to respond to rebuttal testimony and actually deposed the expert).

### 1.   Professor Sedlik's Opinions on Different Licensing Models Is Proper Rebuttal

15   KAYAK first argues that Professor Sedlik "does not directly dispute" Mr.
16   Elsner's opinion that the Agreement uses a "subscription pricing model," and claims
17   that Professor Sedlik "does not address the subscription pricing model at all or
18   express any direct disagreement with Mr. Elsner . . . ."  This is false.  Indeed, later in
19   the same sentence, KAYAK admits that Professor Sedlik actually opines that the
20   Agreement reflects a Rights Managed licensing model and *not* a "subscription
21   pricing model" as Mr. Elsner claims.  (Mot. at 10. ) Professor Sedlik's report
22   describes the various image licensing models commonly used in the industry, and
23   specifically states that he does so in response to Mr. Elsner's opinions.  (Bessenger
24   Decl., Ex. C (Sedlik Report at 6).)  Contrary to KAYAK's claim that he "does not
25   address the subscription pricing model at all" (Mot. at 10), Professor Sedlik's report
26   devotes an entire paragraph to discussing subscription models.  (*Id.*, Ex. C (Sedlik
27   Report at 13).)  He was also deposed at length on this topic, during which he stated:

28

1    This is a rebuttal report to Gary Elsner's report, and Gary

2    Elsner opined in his report on licensing practices in the

3    image licensing industry, and I wanted to help to make

4    clear to the Court that based on the nature of the

5    agreement between the parties, the arrangement was

6    inconsistent with a royalty free licensing arrangement and

7    consistent with a rights managed licensing agreement,

8    which means simply the parties agreed on a scope of use

9    to type of media and then how the fee was going to be

10   calculated . . . .

11   (*Id.*, Ex. D at 71:8-19.)  This testimony is obviously presented to "contradict or rebut

12   evidence on the same subject matter identified by another party" and is therefore

13   proper rebuttal.  Fed. R. Civ. Proc. 26(a)(2)(D).

14              **2.        Professor Sedlik's Opinions Distinguishing Mobile**

15                        **Applications from a Website Is Proper Rebuttal**

16        KAYAK argues that Professor Sedlik's opinions regarding the fact that a

17   website is not a mobile application are not proper rebuttal because "neither KAYAK

18   nor its expert, Mr. Elsner, ever argued that the two are the same."  (Mot. at 11.)

19        As discussed above, this is demonstrably false.  KAYAK has consistently

20   argued, and its witnesses and other surrogates (including Mr. Elsner) have also

21   maintained, that the term "website" includes within its meaning "KAYAK's mobile

22   application."  Accordingly, Professor Sedlik's opinions on this subject matter

23   identified by KAYAK are proper rebuttal.[6]

24   _____

25   [6] KAYAK also references the fact that EVOX's affirmative expert witness, Brad

26   Ulrich, has provided related testimony.  This has nothing to do with proper or improper rebuttal testimony, so it is unclear why KAYAK even mentions it here.

27   Regardless, even assuming Professor Sedlik's testimony was identical to Mr.

28   Ulrich's testimony, which it is not, the solution would be to allow EVOX to choose

### 3. Professor Sedlik's Opinions on the Photographs, and EVOX's Creative Decisions in Producing the Photographs, Are Proper Rebuttal

According to KAYAK, Mr. Elsner "did not opine on copyrightability as such," and therefore Professor Sedlik's opinions on EVOX's creation of the Photographs is improper rebuttal.  Again, KAYAK mischaracterizes Mr. Elsner's testimony.  In fact, as KAYAK must admit, Mr. Elsner opined on EVOX's creative decisions and whether he was able to "identify anything original and non-functional" in just five of the Photographs and "the underlying photographic processes identified by Evox." (Mot. at 16.)  As discussed above, and at length in EVOX's Opposition to KAYAK's Motion for Summary Judgment, KAYAK badly misunderstands the relevant law of copyright.  There is no need for a photographic process to be "original," as but one example.  Be that as it may, Professor Sedlik's testimony "contradict[s] or rebut[s] evidence on the same subject matter identified by another party" and is therefore proper rebuttal.  Fed. R. Civ. Proc. 26(a)(2)(D).

Professor Sedlik specifically addresses EVOX's "spin" photography process, and rebuts Mr. Elsner's opinion regarding the same.  (Bessenger Decl., Ex. C, (Sedlik Report at 41).)  Mr. Elsner's opinion is based on his mistaken assumption that EVOX "does not adjust the camera, lens, horizon wall, camera distance, or overhead lighting for each individual photograph or spin," and therefore concludes that "there is no creativity and no original expression in the resulting works." (*Id*.)[7] As Professor Sedlik opines, even if that were true, there is still ample creative expression in the Photographs. (*Id*.)

only one of the witnesses to testify at trial to avoid redundant testimony, rather than preemptively excluding Professor Sedlik's opinions as "improper rebuttal."

[7] As set forth in EVOX's Opposition to KAYAK's Motion for Summary Judgment, and supported by the evidence cited in EVOX's Statement of Genuine Disputes, EVOX's photographers and post-production workers actually do make individual creative decisions for the spin process photographs.

CALDWELL
LESLIE &
PROCTOR

-21-

KAYAK also identifies various other opinions offered by Mr. Elsner and claims that Professor Sedlik has not addressed these opinions. (*See* Mot. at 16.) To the contrary, Professor Sedlik directly rebuts Mr. Elsner's various opinions in his report, including, for example, that Mr. Elsner confuses "originality" with "novelty" and dismissing Mr. Elsner's claim that protecting EVOX's photographs will result in a monopoly. (*See* ECF No. 76-2 (Elsner Report at 28-30).) There is no basis to exclude this testimony as "improper rebuttal."

## III.   CONCLUSION

Professor Sedlik's testimony is relevant, reliable, and proper rebuttal testimony that will aid the trier of fact in this case. For the foregoing reasons, KAYAK's Motion in Limine to exclude Professor Sedlik's testimony should be denied.


DATED:  January 6, 2017          CALDWELL LESLIE & PROCTOR, PC
                                 ROBYN C. CROWTHER
                                 CRAIG H. BESSENGER
                                 CAMERON J. JOHNSON



                                 By        /s/ Robyn C. Crowther
                                        ROBYN C. CROWTHER
                                 Attorneys for EVOX Productions LLC