UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-5053 PSG (AGRx) | Date | January 20, 2017 |
|---|---|---|---|
| Title | Evox Productions LLC v. Kayak Software Corporation | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge | |
|---|---|---|
| Wendy Hernandez | | Not Reported |
| Deputy Clerk | | Court Reporter |
| Attorneys Present for Plaintiff(s): | | Attorneys Present for Defendant(s): |
| Not Present | | Not Present |

**Proceedings (In Chambers):** Order GRANTING Plaintiff's Motion for Summary Judgment and DENYING Defendant's Motion for Summary Judgment

Before the Court are Plaintiff Evox Production LLC's motion for summary judgment on the question of copyright validity, Dkt. #53, and Defendant Kayak Software Corporation's motion for summary judgment as to all claims, Dkt. #66. The Court finds the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); L.R. 7-15. After considering the moving, opposing, and reply papers, the Court GRANTS Evox's motion for summary judgment on the question of copyright validity and DENIES Kayak's motion for summary judgment.

I.  Background

This is a copyright infringement dispute arising out of Defendant Kayak Software Corporation's ("Kayak") alleged unauthorized use of Plaintiff Evox Productions LLC's ("Evox") photographs on Kayak's mobile application in violation of the parties' License Agreement. *See* Dkt. #1 ("Complaint" or "Compl.").

Evox specializes in creating and licensing high-quality digital photographs of over 6,000 different automotive makes and models since model year 2000. *Compl.* ¶¶ 5, 13; Dkt. #53 ("Evox Motion") 2. Evox registers its images with the U.S. Copyright Office and has copyright certificates for the photographs at issue in this dispute. Dkt. #59, *Declaration of Barry Thompson in Support of Evox's Motion for Summary Judgment* ("Thompson Decl.") ¶ 9. Kayak provides an online travel service that provides consumers with airline, hotel, and car rental search services. Dkt. #60–2, *Defendant's Statement of Uncontroverted Facts in Support of Motion for Summary Judgment* ("DSUF") ¶ 1. Kayak's customers can conduct searches both on Kayak's website and its mobile application which, according to Kayak, operate interchangeably and run off the same server. *Id.* ¶ 2; *see also* Dkt. #60–3, *Declaration of Timothy Knowling in Support of Kayak's Motion for Summary Judgment* ("*Knowling Decl.*") ¶ 3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-5053 PSG (AGRx) | Date | January 20, 2017 |
|---|---|---|---|
| Title | Evox Productions LLC v. Kayak Software Corporation | | |

    On March 18, 2014, the parties entered into a License Agreement that authorized Kayak to use photographs in "AIL 2A – Front ¾ Colorized," ("AIL 2A") which is an "automotive image library" that Evox creates and owns. *Compl.* ¶22; *DSUF* ¶¶ 9–10; *see also Thompson Decl.* Ex. A ("License Agreement"). The specific image library licensed to Kayak, "AIL 2A," contains images of "[a]ll available Franchise Brands" for model years "2006 to the most current Model Year." *See License Agreement*. The License Agreement authorizes Kayak "to use the Licensed Materials within the Scope of Use," which is defined as: "Portal Website Use: (a) Use in research application on a single Portal Website; (b) Use as Accent Graphics on a single Portal Website." Dkt. #54–1, *Plaintiff's Statement of Uncontroverted Facts in Support of Motion for Summary Judgment* ("PSUF") ¶ 1; *see also License Agreement*. The term "Portal" is defined as "a website other than an OEM website or a Dealership website."[1] *Id.* Kayak agreed to a monthly license fee comprising of the greater of $950 or a calculated fee based on number of unique visitors to the "Licensee Portal." *See License Agreement*. The License Agreement further provides that Kayak may remove the Evox trademark and logos from the photographs, provided that copyright attributions appear "on every webpage/screen" containing a licensed photograph and are "displayed in the lower portion of the webpage frame." *See id.* Finally, the License Agreement requires Kayak to submit a "Monthly Portal Usage Report" reflecting the number of unique page views. *License Agreement*.

    At some point after entering into the License Agreement, Evox discovered that, in addition to its website, Kayak was displaying the licensed photographs on its mobile application. *PSUF* ¶2. Moreover, the photographs appeared on the mobile application with the copyright information removed and without any copyright attribution. *Id.* ¶ 3. Evox contacted Kayak and informed it that the License Agreement did not allow use of the photographs on Kayak's mobile application. *Id.* ¶ 2. Evox claims that Kayak never requested or paid for a license to use the photographs on its mobile application, never indicated its intention to use the photographs on its mobile application, and never communicated its purported understanding that the License Agreement permitted such use. Dkt. #85, *Evox's Statement of Genuine Disputes* ("SGD") ¶ 12. Kayak, on the other hand, claims that its understanding of the License Agreement permitted all relevant uses as part of Kayak's business, including use of the images on its mobile application. *DSUF* ¶ 15. Moreover, in accordance with the License Agreement, Kayak submitted monthly usage reports and payments which included all unique visits to both its website and mobile application. *Id.* ¶ 16; *Knowling Decl.* ¶ 17.

---

[1] "OEM" means an original equipment manufacturer of automobiles (e.g. Ford Motor Company). *See License Agreement*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-5053 PSG (AGRx) | Date | January 20, 2017 |
|---|---|---|---|
| Title | Evox Productions LLC v. Kayak Software Corporation | | |

After the parties failed to resolve their dispute informally, Evox filed this action on July 2, 2015 alleging claims for: (1) copyright infringement under 17 U.S.C. § 501 *et seq.*, and (2) removal of copyright management information in violation of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201 *et seq*. PSUF ¶ 3; *see generally Compl.* Kayak filed four counterclaims, including a claim seeking a declaration that Evox's asserted copyrights are "invalid, uncopyrightable, and unenforceable." Dkt. #20.

On November 8, 2016, Evox filed a motion for summary judgment as to Kayak's fourth counterclaim to declare invalid Evox's asserted copyrights. *See Evox Mot.* On the same day, Kayak filed its own motion for summary judgment as to the entire Complaint. Dkt. #57 ("Kayak Mot.").

II.     Legal Standard

A motion for summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A disputed fact is material if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the nonmoving party will have the burden of proof at trial, the movant can prevail by pointing out that there is an absence of evidence to support the nonmoving party's case. *See id.* If the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250.

In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence. Rather, it draws all inferences in the light most favorable to the nonmoving party. *See T.W. Electric Service, Inc. v. Pacific Electric Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987). The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Pub. Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-5053 PSG (AGRx) | Date | January 20, 2017 |
|---|---|---|---|
| Title | Evox Productions LLC v. Kayak Software Corporation | | |

III. Evox's Motion for Summary Judgment

In its motion, Evox seeks judgment as a matter of law on Kayak's fourth counterclaim which challenges the validity of Evox's copyright in the photographs at issue in this case. *See Evox Mot.* 1. Evox argues that undisputed evidence demonstrates that Evox's copyrights are valid, thus entitling Evox to summary judgment on this claim. *Id.*

In order to establish copyright infringement, a plaintiff must prove (a) ownership of a valid copyright; and (2) copying of constituent elements of the work in question which are original. *Feist Publications, Inc. v. Rural Telephone Serv. Co. Inc*., 499 U.S. 340, 361 (1991); *Zobmondo Entm't, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113 (9th Cir.2010). Because Evox bears the burden of proof at trial, its showing that it owns a valid copyright must be "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Macalma v. Bank United of Texas*, 192 B.R. 751, 752–53 (N.D. Cal. 1995).

With respect to the ownership of a valid copyright, it is undisputed that Evox obtained copyright registrations for the photographs in the automotive image library "AIL 2A." *PSUF* ¶ 6; *Thompson Decl*. ¶ 9. A certificate of registration from the U.S. Register of Copyright is prima facie evidence of the validity of a copyright. 17 U.S.C. § 410(c). Evox has submitted copies of copyright certificates for the photographs at issue in this case and Kayak does not dispute their existence. *Thompson Decl*. ¶9, Ex. D; *see also* Dkt. #112–1, *Kayak's Statement of Disputed and Additional Facts in Opposition to Motion for Summary Judgment* ("KSDF") ¶ 6. Therefore, as a threshold matter, Evox's copyright registrations entitle Evox to a rebuttable presumption of validity with respect to the photographs at issue. *Ets–Hokin v. Skyy Spirits, Inc*., 225 F.3d 1068, 1075 (9th Cir.2000) ("Under the copyright laws, the registration of a copyright certificate constitutes prima facie evidence of the validity of the copyright in a judicial proceedings commenced within five years of the copyrights' first publication."). Kayak therefore bears the burden of overcoming the presumption of validity by demonstrating why the photographs are not copyrightable. *Id.* ("A certificate of copyright registration, therefore, shifts to the defendant the burden to prove the invalidity of the plaintiff's copyrights.").

To challenge the validity of Evox's copyright registrations, Defendant argues that the photographs at issue are not entitled to copyright protection because they lack the requisite originality.[2] Dkt. #112, *Kayak's Opposition to Evox's Motion for Summary Judgment* ("Kayak

---

[2] Kayak also raises the argument that Evox's claimed copyrights are unenforceable under the *scenes a faire* doctrine. *See Kayak Opp*. 20–21. Because the *scenes a faire* doctrine is a defense to infringement and not to copyrightability, and Kayak repeats the argument in its own motion

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-5053 PSG (AGRx) | Date | January 20, 2017 |
|---|---|---|---|
| Title | Evox Productions LLC v. Kayak Software Corporation | | |

Opp.") 1. Specifically, Kayak points to Evox's responses to Kayak's Interrogatory No.2 – which asked Evox to identify those elements of its photographs that render them copyrightable – and argues these elements, or, rather, the creative choices Evox made in creating its photographs, are unoriginal and merely functional. *Id.* at 9–20. Kayak's argument copies nearly verbatim from the declaration of its expert, Gary Elsner, a commercial photography consultant, who opines that the elements Evox identified are unoriginal and standard in the stock photography business. Dkt. #57–2, Ex. 5 ("Elsner Decl.").

The Court therefore examines whether, under the Ninth Circuit's generous standard of originality, the photographs at issue in this case are entitled to copyright protection as a matter of law. *See Ets-Hokin*, 225 F.3d at 1076 (holding that defendants have failed to overcome the presumption of validity "primarily because the degree of originality required for copyrightability is minimal."); *see also Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.*, 220 F.Supp.2d 289, 298 n. 11 (S.D.N.Y.2002) (noting, on a motion for summary judgment, that "when a work clearly contains sufficient originality to be copyrightable, courts may decide the issue as a matter of law.") (citations omitted).

The Copyright Act expressly extends copyright protection to "pictorial" and "graphic" works. 17 U.S.C. § 102(a)(5). Therefore, photographs, including those used for commercial purposes or advertising, may enjoy copyright protection. *Ets-Hokin*, 225 F.3d at 1075. Addressing the threshold for copyrightability, the Supreme Court in *Feist* held that "the *sine qua non* of a copyright is originality, " and defined the term "original" to mean only "that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." *Feist*, 499 U.S. at 345; *Ets-Hokin*, 225 F.3d at 1076. Under *Feist*, "the requisite degree of creativity is "extremely low; even a slight amount will suffice." *Ets–Hokin*, 225 F.3d at 1076. Under this "minimal threshold" standard for protection, "[t]he vast majority of works make the grade quite easily, as they possess some creative spark, no matter how crude, humble or obvious it might be." *Id.* (internal quotations and citation omitted).

There is no dispute that Evox created the photographs in the "AIL 2A" library, as opposed to copying the images from other works; therefore, the sole issue to determine is whether the photographs contain "at least some minimal degree of creativity" to grant them copyright protection. *Feist*, 499 U.S. at 345. The Ninth Circuit decision in *Ets-Hokin v. Skyy Spirits Inc.* is instructive.

---

for summary judgment, the Court addresses the issue in the context of Kayak's motion, discussed below.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-5053 PSG (AGRx) | Date | January 20, 2017 |
|---|---|---|---|
| Title | Evox Productions LLC v. Kayak Software Corporation | | |

  The plaintiff photographer, Ets-Hokin, claimed that Skyy had violated his copyright in a series of photographs he had taken of the blue Skyy vodka bottle by later using similar photographs taken by another photographer. *Ets-Hokin*, 225 F.3d at 1072. Applying the "low threshold for creativity" standard, the Ninth Circuit held that Ets-Hokin's photographs were entitled to at least some copyright protection. *Id.* at 1076–77. In examining the photographs at issue, the Court observed:

> "In all three photos, the bottle appears in front of a plain white or yellow backdrop, with back lighting. The bottle seems to be illuminated from the left (from the viewer's perspective) such that the right side of the bottle is slightly shadowed. The angle from which the photos were taken appears to be perpendicular to the side of the bottle, with the label centered, such that the viewer has a 'straight on' perspective."

*Id*. at 1071–72. Tracing the history of case law concerning copyrightability of photographs, the Court noted that courts have continuously held that decisions by the photographer, or, more precisely, the elements of photographs that result from these decisions are worthy of copyright protection. *Id*. at 1074–75. The Court in particular examined the decision in *Burrow–Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 58 (1884), a landmark case involving a photograph of Oscar Wilde. *Id*. There, the Supreme Court held that several specific decisions made by the photographer rendered the photograph "original;" decisions that included: the posing and arrangement of Wilde, the selection and arrangement of background and accessories, and the arrangement and disposition of light and shade. *Id*. (citing *Burrow-Giles*, 111 U.S. at 60). The Ninth Circuit therefore concluded that, in view of the low threshold for the creativity, the "decisions Ets-Hokin made about lighting, shading, angle, background, and so forth" were sufficient to entitle the photographs to copyright protection. *Id*. at 1077.

  The leading treatise on copyright confirms this approach, *see* Melvin B. Nimmer & David Nimmer, Nimmer on Copyright § 2.08[E][1], at 2–130 (1999) ("[A]lmost any[ ] photograph may claim the necessary originality to support a copyright merely by virtue of the photographers' [sic] personal choice of subject matter, angle of photograph, lighting, and determination of the precise time when the photograph is to be taken."), as do courts in this, and other circuits. *See, e.g.*, *Los Angeles News Serv. v. Tullo*, 973 F.2d 791, 794 (9th Cir. 1992) (quoting *United States v. Hamilton*, 583 F.2d 448, 452 (9th Cir. 1978)) ("We have stated before that the courts have recognized repeatedly that the creative decisions involved in producing a photograph may render it sufficiently original to be copyrightable and "have carefully delineated selection of subject, posture, background, lighting, and perhaps even perspective alone as protectible elements of a photographer's work."); *Rogers v. Koons*, 960 F.2d 301, 307 (2d Cir. 1992) ("Elements of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-5053 PSG (AGRx) | Date | January 20, 2017 |
|---|---|---|---|
| Title | Evox Productions LLC v. Kayak Software Corporation | | |

originality in a photograph may include posing the subjects, lighting, angle, selection of film and camera, evoking the desired expression, and almost any other variant involved.") (citations omitted).

Here, Evox has submitted sufficient evidence to conclude that the combination of choices Evox made in taking the photographs at issue meets the "minimal degree of creativity" requirement to merit copyright protection. For example, in its response to Kayak's discovery request to identify original content of its photographs, Evox provides a detailed description of decisions taken in creating the photographs. Dkt. # 77–8, *Declaration of Craig H. Bessenger*, Ex. D (*Evox's Fourth Amended Response to Kayak's First Set of Interrogatories*) pp. 12–35. Specifically, Evox shows that specific decisions were made concerning the positioning of the vehicle and the camera angle; the degree to which the wheels should be turned; the use of camera lens and focus; the distance of the vehicle from the camera, the use of overhead lighting to produce a particular shadow under the car and reflection in the front window; the reflection of a gray half wall in the doors to create contrast; and placement of the vehicle against a white background. *Id*. The end product is a photograph that contains the effect created by the combination of choices of perspective, angle, lighting, shading, focus, lens, and so on, that Evox made in staging and creating the images. In light of the low threshold for creativity accepted in the Ninth Circuit, the totality of these choices is sufficient to provide Evox's photographs with the minimal originality required for copyright protection. *Ets-Hokin*, 225 F.3d at 1076 (elements of originality in a photograph include "lighting, shading, angle, background, and so forth," the decisions about which are "sufficient to convey copyright protection"); *see also SHL Imaging, Inc. v. Artisan House, Inc*., 117 F. Supp. 2d 301, 311 (S.D.N.Y.2000) ("What makes plaintiff's photographs original is the totality of the precise lighting selection, angle of the camera, lens and filter selection.").

In a recent case in this district involving another set of Evox's vehicle photographs, the Court concluded the same and granted summary judgment in Evox's favor on this very issue. *See Evox Productions, LLC v. California Rent-A-Car, Inc. et al*., CV-15-8046-MWF (RAOx), pp. 14–15 (C.D. Cal. July 26, 2016) [hereinafter, "California Rent-A-Car"]. In determining whether Evox's photographs met the "minimal degree of creativity," the Court noted:

> "Here, Plaintiff is involved with the staging and creation of the scenes depicted in the Photographs. For example, Plaintiff makes creative choices in determining whether and to what degree the wheels should be turned, whether and what props should be shown un the trunk or interior, and whether and which lights should be turned on."

Case 2:15-cv-05053-PSG-AGR Document 139 Filed 01/20/17 Page 8 of 18 Page ID #:12804

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-5053 PSG (AGRx) | Date | January 20, 2017 |
|---|---|---|---|
| Title | Evox Productions LLC v. Kayak Software Corporation | | |

*Id.* at 15. The court held that, in light of the prevailing approach in the Ninth Circuit, the "combination of creative choices Plaintiff made in taking the Photographs" met the "minimal degree of creativity" standard for copyright protection. *Id.*

Kayak does not contest Evox's evidence, but rather argues that the photographs lack originality because the decisions involved in creating them are functional, unoriginal, and merely part of a process. *Kayak Opp.* 9–20. First, Kayak expends much effort trying to convince the Court that what Evox has created is merely a highly efficient assembly-line process, which cannot be the proper subject of copyright protection. *See id.* 10. This argument, however, completely misses the mark. Evox is not asserting a copyright in the process it uses, nor could it. Section 102(b) of the Copyright Act identifies specifically those elements of a work for which copyright is not available: "In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." 17 U.S.C. § 102(b). However, "the inclusion of a "procedure" or "process" within an original work does not negate the copyright protection of the original aspects of the work—the copyright protection merely fails to extend to the actual "procedure" or "process." *Honeywell Intern., Inc. v. Western Support Group, Inc.*, 947 F. Supp. 2d 1077 (D. Ariz. 2013). As the Ninth Circuit has made clear, "almost any [] photograph may claim the necessary originality to support a copyright merely by virtue of the photographers' personal choice of subject matter, angle of photograph, lighting, and determination of the precise time when the photograph is to be taken." *Ets- Hokin*, 255 F.3d 1076. Accordingly, it is the choice in selecting and applying these "processes" that infuse the end result with the requisite minimal degree of creativity. *Id.* at 1074–75 (explaining that "decisions by the photographer – or, more precisely, the elements of photographs that *result* from these decisions – are worthy of copyright protection.") (emphasis in original). Evox is not trying to protect any given choice of angle or lighting it made when creating its photographs, and Kayak's argument to the contrary mischaracterizes the issue and ignores applicable law.

Kayak next argues that Evox's decisions about indirect lighting, camera lens, focal length, and so forth, "have all been shown to be functional or unoriginal," thus precluding any finding of originality. *Kayak Opp.* 12–20. This argument also misconstrues the applicable law. As emphasized by the Supreme Court in *Feist*, originality requires only that the author make the work independently (i.e., without copying from another work), and that it display some minimal level of creativity. *Feist*, 499 U.S. at 358. In other words, "originality in copyright law is not a question of novelty, but one of authorship or source of origin." *Lin-Brook Builders Hardware v. Gertler*, 352 F.2d 298, 301 (9th Cir. 1965). Therefore, it is irrelevant that Evox may not be the first to select the ¾ font angle perspective or that indirect overhead lighting is commonly used in photography. Evox is not required to invent a never-before used angle in order to obtain

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-5053 PSG (AGRx) | Date | January 20, 2017 |
|---|---|---|---|
| Title | Evox Productions LLC v. Kayak Software Corporation | | |

copyright protection (nor does Kayak point to any case that suggests such a requirement exists); Evox merely has to make decisions as to what angles, lighting, background, and so forth, it deems are best to achieve the desired end result in its images. In doing so, Evox's photographs display a "minimum level of creativity." *Feist*, 499 U.S. at 358.

The court in *California Rent-A-Car* rejected the same argument, noting that: "Defendants' arguments that the Photographs lack originality because . . .the techniques used are 'standard or unoriginal' also fail to grapple with the prevailing approach in the Ninth Circuit. . . . What matters here is not the novelty of the selected technique but the consecutive creative choices emanating from Plaintiff's selection of a particular technique from a field of other possible techniques." *California Rent-A-Car*, at 15.

The cases Kayak relies on are distinguishable. For example, *Oriental Art* held that photographs of Chinese food dishes taken for a menu lacked the requisite originality to be copyrightable. *Oriental Art Printing, Inc. v. Goldstar Printing Corp.*, 175 F. Supp. 2d 542, 546 (S.D.N.Y.2001). In support of its finding, the court in *Oriental Art* noted that "plaintiffs fail to describe how the photographs were taken, or how they were incorporated into the copyrighted design as a whole.... While [plaintiff] states that he worked with a photographer on the 'lighting' and 'angles,' he provides no description of either the lighting or angles employed, or any desired expression." *Id*. at 547. Thus, the *Oriental Art* court acknowledged that the lighting and angles employed by the photographer are facts to be considered in determining originality; they were simply lacking in the record before the Court. In contrast, Evox has provided detailed descriptions of the choices it made in creating the photographs, including decisions about angles and lighting. Furthermore, the plaintiff in *Oriental Art* did not have registered copyrights in the images at issue but rather held a copyright registration only in the overall design in which the photographs were arranged. *Id*. at 548. Thus, not only is *Oriental Art* an out-of-circuit decision, but the factual circumstances are not on point.

Kayak's reliance on another out-of-circuit decision, *Meshwerks, inc. v. Toyota Motor Sales U.S.A., Inc*., is similarly unavailing. 528 F.3d 1258 (10th Cir. 2008). First, *Meshwerks* did not even involve photographs, but a digital technology that produced digital models of vehicles. *Id*. at 1260. Second, while acknowledging that the same ingredients that apply to finding a photograph copyrightable apply to the digital medium; the Court found that "the facts in this case unambiguously show that Meshwerks did not make any decisions regarding lighting, shading, the background in front of which a vehicle would be posed, the angle at which to pose it, or the like – in short, its models reflect none of the decisions that can make depictions of things or facts in the world, whether Oscar Wilde or a Toyota Camry, new expressions subject to copyright protection." *Id*. at 1265. In contrast, Evox has shown it made a number of such decisions.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-5053 PSG (AGRx) | Date | January 20, 2017 |
|---|---|---|---|
| Title | Evox Productions LLC v. Kayak Software Corporation | | |

Given the Copyright Act's low threshold for originality in general and the minimal requisite originality for photographs in particular, the Court concludes that, as a matter of law, the photographs at issue in this case meet the minimal level of creativity that entitles them to copyright protection. *Ets-Hokin*, 225 F.3d at 1071.

Evox holds valid copyrights in the photographs at issue in this case. Summary judgment on the question of copyright validity is therefore GRANTED.

IV. Kayak's Motion for Summary Judgement

In its Motion, Kayak asks this Court to grant summary judgment in its favor on Evox's claims for copyright infringement and violations of the DMCA. *See generally Kayak Mot*. In support, Kayak presents several arguments. First, Kayak argues that its conduct was permitted by the License Agreement. Second, Kayak argues that Evox's photographs are not entitled to copyright protection due to lack of sufficient originality. Because this question has already been determined in Evox's favor, the Court need not re-address it in this motion. *See Section III, supra*. Third, Kayak argues that Evox's copyrights are unenforceable under the *scenes a faire* doctrine. Fourth, Kayak argues that Evox can claim at most one infringement for purposes of statutory damages under 17 U.S.C. § 504(c). Lastly, Kayak argues that it did not intentionally remove Evox's copyright notice in violation of the DMCA. Each of these arguments is addressed in turn.[3]

    A. Whether Kayak's conduct was permitted by the contract

Kayak's first argument in its motion for summary judgment asserts that the License Agreement between the parties permitted Kayak's use of the "AIL 2A" photographs on its mobile application, thus precluding a finding of infringement. *Kayak Mot*. 3–9.

---

[3] Kayak makes a final argument, both in opposition to Evox's motion and in its own motion, asserting that Evox's claims should be limited to the five photographs identified and discussed in response to Kayak's Interrogatory No.2. *Kayak Opp*. 21; *Kayak Mot*. 23. This argument lacks merit in light of the Magistrate Judge's express order directing Kayak to select five sample photographs for Evox to discuss, given that it would be "needlessly and unreasonably duplicative" for Evox to identify original expression in each of the hundreds of photographs at issue. *See* Dkt. #32, at 2. Nothing in that order suggests that Evox would be limited to pursuing its claims as to those five photographs only.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-5053 PSG (AGRx) | Date | January 20, 2017 |
|---|---|---|---|
| Title | Evox Productions LLC v. Kayak Software Corporation | | |

It is undisputed that the License Agreement does not contain a provision that expressly permits use on mobile applications, nor does it even include the word "mobile application." *See License Agreement*. What is in the dispute, however, is the meaning of the term "Portal." *See Kayak Mot*. 4. Paragraph 6 of the License Agreement defines Kayak's scope of use as: "Portal Website Use: (a) Use in research application on a single Portal Website; (b) Use as Accent Graphics on a single Portal Website." *License Agreement*. The term "Portal" is defined as "a website other than an OEM website or a Dealership website." *Id*. The majority of Kayak's argument is framed in terms of Kayak's understanding of the term "portal," which Kayak argues "is not defined unambiguously in the Agreement." *Kayak Mot*. 5.

Under California law, when the meaning of the words in a contract is disputed, the Court must provisionally consider all extrinsic evidence that is relevant to show whether the contractual language is reasonably susceptible to either of the competing interpretations advanced by the parties. *Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*, 69 Cal. 2d 33, 39 (1968); *Wolf v. Sup. Ct.*, 114 Cal. App. 4th 1343, 1351 (2004). This is the case even if the contract appears unambiguous on its face, because "the fact that the terms of an instrument appear clear to a judge does not preclude the possibility that the parties chose the language of the instrument to express different terms." *Pac. Gas,* 69 Cal. 2d at 39. "Extrinsic evidence can include the surrounding circumstances under which the parties negotiated or entered into the contract; the object, nature and subject matter of the contract; and the subsequent conduct of the parties." *Cedars-Sinai Med. Ctr. v. Shewry*, 137 Cal. App. 4th 964, 980-81 (2006). Whether a contract is ambiguous is a matter of law. *Maffei v. Northern Ins. Co.*, 12 F.3d 892, 898 (9th Cir. 1993). If the Court determines that the contractual provision in question is ambiguous, summary judgment is inappropriate because the differing views of the parties' intent will raise genuine issues of material fact. *Id.* Summary judgment is appropriate only if the contract is unambiguous. *Nat'l Union Fire Ins. Co. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983).

Kayak first challenges the term "portal" as being stripped of all meaning in the contract because the actual phrase in the agreement, "Portal Website," means only "website." *Kayak Mot*. 4. Further, Kayak contends that "portal" also means "gateway, entrance or opening to something else" under general dictionary definitions. *Id*. at 5. In the context of the internet, Kayak claims "portal" can be understood as an "anchor site that connects to a wide array of other content." *Id*. Based on this more technical definition, Kayak believes its website is "a portal to other content that is part of its travel service, including the mobile app." *Id*. Consistent with these meanings, Kayak argues the term "portal" is therefore broad enough to include use on Kayak's mobile application. *Id*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-5053 PSG (AGRx) | Date | January 20, 2017 |
|---|---|---|---|
| Title | Evox Productions LLC v. Kayak Software Corporation | | |

Kayak also argues that interpreting the License Agreement as excluding use on Kayak's mobile application is at odds with the parties' intent. *Id*. at 7. Kayak contends that its website and mobile application "are simply two sides of the same coin," completely integrated and based on the same server. *Id*. Kayak therefore "always understood that it was licensing permission to use the photographs on both its website and its interconnected mobile app." *Id*. Otherwise, Kayak never would have entered into an agreement that precluded use of the images on its mobile application. *Id*.

In support, Kayak submits evidence of the negotiations leading to the execution of the License Agreement that show its intent to use the photographs on its mobile application in addition to its website. *See generally Knowling Decl*. For example, Kayak submits an internal company email from Lauren Fulton, a Kayak employee who handled the negotiations with Evox, discussing the likely volume usage on "all sites, web & mobile." *Knowling Decl*., Ex. 3. Pursuant to Kayak's understanding of the License Agreement, Kayak always paid Evox for all uses – both on its website and the mobile application – when tendering monthly payments and usage reports pursuant to the formula contained in paragraph 8 of the License Agreement. *Knowling Decl*. ¶ 17; *see also License Agreement*. While Kayak admits that the phrase "Portal Website" was never specifically negotiated by the parties, Kayak argues that nothing about the terms signaled to Kayak that it was meant to limit Kayak's use only to its website and preclude all use on its mobile application. *Knowling Decl*. ¶ 21. Kayak further submits that, in negotiating the License Agreement, Kayak never discussed its intended use of the images, never stated that it intended to use the images only on its website, and that Evox never inquired if Kayak intended to only use the images on its website but not its mobile application. *Id*. ¶ 11.

In opposition, Evox submits an email exchange between Evox employee Nena Addison and Ms. Fulton, where Ms. Addison inquires: "And our content would only be used on the one website, www.kayak.com, correct?," to which Ms. Fulton responded: "We have a few affiliate websites in which we power our search. Your images would also appear on these websites. We can carve out the names of these sites in a contract." *See Bessenger Decl*., Ex. O. In addition to not mentioning the mobile application, Evox further points out that Kayak never identified the affiliate websites later on in the License Agreement. *Opp*. 7. In her deposition, Ms. Fulton testified that she knew Kayak intended to use the images on its mobile application but did not include this in her response because it was an exploratory email and her focus was on obtaining pricing information. *Bessenger Decl*., Ex. N. Evox also submits another email from Evox employee John Bronson informing Ms. Fulton that Evox will license the images for "Research Portal (website) Use." *Bessenger Decl*., Ex. P. Again, in her deposition, Ms. Fulton testified that she understood this reference to include the mobile application. *Bessenger Decl*., Ex. N.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-5053 PSG (AGRx) | Date | January 20, 2017 |
|---|---|---|---|
| Title | Evox Productions LLC v. Kayak Software Corporation | | |

The Court need not continue presenting the abundant competing evidence submitted by the parties in order to conclude that genuine issues of material fact exist as to the parties' understanding of the scope of the License Agreement. Moreover, Kayak's own vehement argument that the term "portal" is susceptible to different interpretations precludes granting summary judgment in Kayak's favor. As stated above, summary judgment is only appropriate if the contract is unambiguous, *Nat'l Union Fire*, 701 F.2d at 97, and by Kayak's own argument, it is not.

Therefore, the Court cannot conclude that, as a matter of law, the License Agreement permitted Kayak to use the "AIL 2A" images on its mobile application. Summary judgment on this issue is therefore DENIED.

  B.  Whether the *scenes a faire* doctrine bars Evox's claims

Kayak argues next that the *scenes a faire* doctrine renders Evox's copyright unenforceable. *Kayak Mot.* 21. Where applicable, the *scenes a faire* doctrine is as an affirmative defense to copyright infringement. *Satava v. Lowry*, 323 F.3d 805, 810 n.3 (9th Cir. 2003); *Kim Seng Co. v. J & A Importers, Inc.*, 810 F. Supp. 2d 1046, 1057 (C.D. Cal. 2011). Kayak's argument fails, however, because the doctrine is inapplicable to the factual circumstances of this case.

Under the *scenes a faire* doctrine, when certain commonplace expressions are indispensable and naturally associated with the treatment of a given idea, those expressions are treated like ideas and therefore not protected by copyright. *Swirsky v. Carey*, 376 F.3d 841, 850 (9th Cir. 2004). The Ninth Circuit's decision in *Ets-Hokin* is again instructive. Although the Court determined that Ets-Hokin's photographs met the minimal threshold of originality required for copyright protection, the Court also noted that the scope of that protection was limited by the doctrines of merger and *scenes a faire*. *Ets-Hokin*, 225 F.3d at 1083. The Court explained:

> "Under the merger doctrine, courts will not protect a copyrighted work from infringement if the idea underlying the work can be expressed only in one way, lest there be a monopoly on the underlying idea. In such an instance, it is said that the work's idea and expression 'merge.' Under the related doctrine of scenes a faire, courts will not protect a copyrighted work from infringement if the expression embodied in the work necessarily flows from a commonplace idea."

*Id*. at 1082. The district court applied these principles on remand and entered summary judgment of "no infringement" in favor of Skyy. *Id*. In affirming the entry of summary

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-5053 PSG (AGRx) | Date | January 20, 2017 |
|---|---|---|---|
| Title | Evox Productions LLC v. Kayak Software Corporation | | |

judgment, the Ninth Circuit again applied the doctrines of merger and *scenes a faire* to find that Skyy's use of similar photographs by another photographer did not constitute infringement. *Ets-Hokin v. Skyy Spirits Inc.*, 323 F.3d 763, 764 (9th Cir. 2003) [hereinafter "Ets-Hokin II"]. The Court concluded that the similarities between Ets-Hokin's and Skyy's photographs were inevitable, "given the shared concept, or idea, of a photographing the Skyy bottle." *Id.* Therefore, the limiting doctrines of merger and *scenes a faire* left Ets-Hokin's photographs with only a "thin" copyright, which protects against only virtually identical copying. *Id.* Skyy's photographs were not infringing because they were not identical replicas of Ets-Hokin's photographs, but differed in lighting, angles, shadows, reflections and background. *Id.*

Similarly, in *Satava v. Lowry*, a glass artist who produced lifelike glass-in-glass sculptures of jellyfish brought a copyright infringement claim against his competitor for making similar sculptures. 323 F.3d 805 (9th Cir. 2003). Applying the *scenes a faire* doctrine, the Ninth Circuit concluded that those aspects of the sculptures that resulted from jellyfish physiology and from the glass-in-glass method were commonly used, part of the public domain and thus plaintiff "may not use copyright law to seize them for his exclusive use." *Id.* at 811. Citing to its decision in *Ets-Hokin*, the Court explained:

> "Satava may prevent others from copying the original features he contributed, but he may not prevent others from copying elements of expression that nature displays for all observers, or that the glass-in-glass medium suggests to all sculptors. Satava possesses a thin copyright that protects against only virtually identical copying."

*Id.* at 812.

By evoking the *scenes a faire* doctrine, Kayak either misconstrues the applicability of the doctrine or the factual circumstances of this case. Evox is not asserting a copyright in the image of a particular vehicle or the method used in photographing the vehicle. Evox is not protesting because someone else is making photographs of vehicles that look identical to Evox's. Evox is asserting a copyright in the *actual* photographs that Evox created and owns which, by meeting the minimal threshold of originality, are entitled to a "thin" copyright that protects them from virtual identical copying. *Ets-Hokin II*, 323 F.3d at 764; *Apple Computer Corp. v. Microsoft Corp.*, 35 F.3d 1435, 1439 (9th Cir.1994) ("When the range of protectable expression is narrow, the appropriate standard for illicit copying is virtual identity."). While Evox's thin copyright does not allow it to prevent others from making photographs of vehicles using the same methods, it does entitle Evox to prevent others from unauthorized use of the photographs it actually created and owns. Because it is undisputed the Kayak used Evox's photographs on its mobile application, rather than some other third-party photographs of the same vehicles, the *scenes a faire* doctrine has no bearing on this case.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-5053 PSG (AGRx) | Date | January 20, 2017 |
|---|---|---|---|
| Title | Evox Productions LLC v. Kayak Software Corporation | | |

     C.    <u>Whether Evox can claim at most one infringement</u>

     Lastly, Kayak argues that, for purposes of statutory damages under 17 U.S.C. § 504(c), Evox may assert at most one infringement, rather than infringements of multiple photographs, because the infringement at issue involves a single compilation, namely, the "AIL 2A" image library. *Kayak Mot.* 23.

     Section 504(c)(1) of the Copyright Act permits the copyright owner to recover "an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally." 17 U.S.C. § 504(c)(1). Section 504(c)(1) further provides that "for purposes of this subsection, all the parts of a compilation . . . constitute one work." *Id.* Kayak argues it licensed only "one thing: its 'Automotive Image Library,'" and not individual photographs. *See Rep.* 10.

     In is undisputed that Section 4 of the License Agreement provides that the product licensed to Kayak is the automotive image library "AIL 2A – Front ¾ Colorized" for model years "2006 to the most current Model Year" of "[a]ll available Franchise Brands." *See License Agreement*. Although the License Agreement does not identify the individual photographs contained in "AIL 2," it is undisputed that each one of those photographs was produced separately and that each has its own copyright registration. *PSUF* ¶ 6; *Thompson Decl.* ¶ 9. In other words, although they were licensed to Kayak as a group, the individual photographs at issue can "live their own copyright life." *Walt Disney Co. v. Powell*, 897 F.2d 565, 569 (D.C. Cir. 1990) (stating that "separate copyrights are not distinct unless they can 'live their own copyright life'"); *Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.*, 996 F.2d 1366, 1381 (2d Cir. 1993) (holding that the eight teleplays of a television series constituted separate works for purposes of awarding statutory damages because each teleplay was separately written and separately copyrighted). In *Gamma Audio & Video, Inc. v. Ean–Chea*, for example, the First Circuit disagreed with the district court's holding that the episodes of a series were a single work because the copyright holder sold only complete sets of the series to video stores. 11 F.3d 1106, 1117 (1st Cir. 1993). The Court reversed, finding instead that not only was each episode separately produced, but viewers could rent as few or as many of the episodes as they wished. *Id.* By analogy, Evox could also license as few or as many of its photographs, individually or in groups, because each photograph has "an independent economic value and is, in itself, viable." *Id.* (citing *Walt Disney*, 897 F.2d at 569). The Ninth Circuit has also adopted the independent economic value test to determine what constitutes a separate work for purposes of § 504(c)(1). *See Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1193 (9th Cir. 2001) (affirming district court's finding that each episode of a series constitutes a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-5053 PSG (AGRx) | Date | January 20, 2017 |
|---|---|---|---|
| Title | Evox Productions LLC v. Kayak Software Corporation | | |

separate work for purposes of computing statutory damages because the episodes were separately written, produced, and registered).

Based on the foregoing, the Court cannot conclude as a matter of law that the automotive image library – "AIL 2A" – constitutes "one work" for purposes of damages under § 504(c)(1). Defendant's motion for summary judgment on this issue is therefore DENIED.

D. <u>Whether Kayak is entitled to summary judgment in Evox's DMCA claim</u>

Plaintiff's second cause of action asserts that Kayak violated the Digital Millennium Copyright Act, 17 U.S.C. § 1202(b) ("DMCA") by intentionally removing the Evox trademark and logo from the photographs that were displayed on the mobile application. *See Compl*. ¶¶ 38–43.

To prevail on a DMCA claim, Evox must prove that Kayak (1) intentionally removed Evox's copyright label from the photographs (2) without Evox's authorization and while 3) knowing or having reasonable grounds to know that the removal would induce, enable, facilitate, or conceal an infringement of the federal copyright laws. 17 U.S.C. § 1202(b)(1); *Gardner v. CafePress Inc.*, No. 3:14-CV-0792-GPC-JLB, 2014 WL 7183704, at *4 (S.D. Cal. Dec. 16, 2014) ("§ 1202 creates liability for persons who . . . 'intentionally remove or alter any [copyright management information],' without the authority of the copyright owner or the law, 'knowing, or . . . having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement.'") (citation omitted).

Kayak argues that there is no evidence that it acted in bad faith in removing the copyright attribution because Kayak was expressly authorized to do so pursuant to the License Agreement. *Kayak Mot*. 22. The License Agreement provided that Kayak could remove the copyright information provided that copyright attribution "appears on every webpage/screen" containing a photograph and "is displayed in the lower portion of the webpage frame." *See License Agreement*. Kayak admits that the photographs appeared on the mobile application without the requisite attribution, but contends that this is the unintended effect of the expressly authorized removal. *Kayak Mot*. 22. Because the images shown on Kayak's website and mobile application are all stored on the same web-server, once the copyright information was removed and the photographs were stored as such on the server, the images necessarily appeared on both the website and the mobile application without the copyright attribution. *DSUF* ¶ 59; *Knowling Decl*. ¶ 35. Given the nature of the mobile application appearance, it is not possible to provide "webpage/screen" attribution as there is no "lower portion" of a page on a mobile application. *Kayak Mot*. 22. Kayak further argues that Evox fails to point to any evidence that Kayak

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-5053 PSG (AGRx) | Date | January 20, 2017 |
|---|---|---|---|
| Title | Evox Productions LLC v. Kayak Software Corporation | | |

deliberately removed the copyright information with the intent to "induce, enable, facilitate, or conceal an infringement of any right under this title." *Id.*; *DSUF* ¶ 60: *Declaration of Jonathan E. Moskin*, Ex. 13.

Evox challenges Kayak's argument by pointing to the fact that Kayak deliberately used software in its possession to remove the trademark and logo, and then stored the photographs as such on its server for use in connection both with its website and mobile application. *SGD* ¶ 177; *Bessenger Decl*. Ex. K. Evox argues that evidence contradicts Kayak's statement that the lack of attribution on the mobile application was an "unintended effect," asserting instead that Kayak simply never made any effort to provide attribution on its mobile application despite being aware of the contractual provision requiring it to do so. *Id.* ¶ 179. On account of this awareness, Evox argues there is ample evidence that Kayak "knew or should have known" that its removal of the Evox copyright information would "induce, enable, facilitate or conceal an infringement" on its mobile application. *Evox Opp*. 21.

In light of the foregoing, the Court finds that genuine issues of material fact exist as to whether Kayak intentionally removed the copyright information from the photographs that appeared on the mobile application and whether Kayak had reasonable grounds to know that the removal would induce, enable, facilitate or conceal infringement. Determining these factual disputes and evaluating the parties' credibility on this issue falls squarely within the province of the jury. Summary judgement on Plaintiff's DMCA claim is therefore DENIED.

V.  Conclusion

For the above reasons, Evox's motion for summary judgment on the question of the validity of its copyrights is GRANTED. Kayak's motion for summary judgment is DENIED in its entirety, and specifically:

- DENIED as to whether the parties' contract permitted Kayak's conduct;
- DENIED as to whether the *scenes a faire* doctrine bars Evox' infringement claim;
- DENIED as to whether Evox can claim at most one infringement for purposes of § 504(c)(1);
- DENIED as to the DMCA claim.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-5053 PSG (AGRx) | Date | January 20, 2017 |
|---|---|---|---|
| Title | Evox Productions LLC v. Kayak Software Corporation | | |