JEAN-PAUL CIARDULLO, CA Bar No. 284170
   jciardullo@foley.com
**FOLEY & LARDNER LLP**
555 SOUTH FLOWER STREET, SUITE 3500
LOS ANGELES, CA 90071-2411
TELEPHONE:  213.972.4500
FACSIMILE:   213.486.0065

JONATHAN E. MOSKIN (pro hac vice)
   jmoskin@foley.com
JMOSKIN@FOLEY.COM
**FOLEY & LARDNER LLP**
90 PARK AVENUE
NEW YORK, NY 10016-1314
TELEPHONE:	(212) 682-7474
FACSIMILE:	(212) 687-2329

Attorneys Defendant-Counterclaimant
KAYAK SOFTWARE CORPORATION

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| EVOX PRODUCTIONS LLC, a Delaware limited liability company,<br><br>                    Plaintiff,<br><br>           vs.<br><br>KAYAK SOFTWARE CORPORATION, a Delaware corporation; and DOES 1-10,<br><br>                    Defendants.<br><br>KAYAK SOFTWARE CORPORATION, a Delaware corporation,<br><br>                    Counter-Claimant,<br><br>           vs.<br><br>EVOX PRODUCTIONS LLC, a Delaware limited liability company,<br><br>                    Counter-Defendant. | Case No. CV15-05053-PSG-AGR<br><br>**KAYAK SOFTWARE CORPORATION'S REPLY IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY OF JEFFREY SEDLIK**<br><br>Date:      January 31, 2017<br>Time:     9:00 a.m.<br>Place:    Courtroom 6A |

## I. INTRODUCTION

In opposing KAYAK's motion to exclude the testimony of Jeffrey Sedlik, Evox concedes that, as a rebuttal witness, Mr. Sedlik is only permitted to testify in response to the report of KAYAK's expert on stock photography, Gary Elsner. However, as shown below, Evox identifies virtually nothing in Mr. Sedlik's report that even purports to rebut Mr. Elsner's analysis, and in the few instances where it does, Mr. Sedlik's report is conclusory and supported by no evidence or analysis. Indeed, his views on the parties agreement contradict the testimony of Evox's own company witnesses. Regarding copyrightability, Mr. Sedlik's report was shown to be simply dishonest as it was simply copied from another report in another case involving completely different photos, and Evox now compounds that problem with its own troubling lack of candor by stating falsely that eight of the photos were at issue in the prior case. This is simply untrue, as shown by review of the eight photographs. (Supp. Moskin Decl Exs. 4,5.) Mr. Sedlik is a plainly biased witness offering legal arguments on contract law and copyright despite having no credentials as a lawyer.

## II. ARGUMENT

In its opening brief, KAYAK noted that "Rule 403 permits the exclusion of relevant evidence 'if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury....'" *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 595 (1993). Evox responds that the court should focus on the expert's "principles and methodology," yet as shown below and in KAYAK's moving brief, Mr. Sedlik identifies no principles of contract interpretation, instead just offering argument untethered to the facts or the law. His methodology regarding his copyright discussion was simply to copy his report from an irrelevant case and then testify dishonestly about it. Evox also suggests a court has discretion to disregard the literal language of Fed.R.Civ.P. 26(a)(2)(D) limiting rebuttal testimony evidence "intended solely to contradict or rebut evidence on the same subject matter identified by another party." However, *Rent-A-Ctr., Inc. v. Canyon Television & Appl.*

-1-

*Rental, Inc.*, 944 F.2d 597, 601 (9th Cir. 1991), did not involve Rule 26(a)(2)(D), but rather referred to evidence allowed at a TRO hearing.  Evox has the burden of proving that KAYAK's use of its images was outside the scope of the parties' Agreement, *Realnetworks, Inc. v. DVD Copy Control Ass'n,* 641 F. Supp. 2d 913, 945 (N.D. Cal. 2009); *Netbula, LLC v. Storage Tech. Corp.*, No. C06-07391 MJJ, 2008 WL 228036, at *2 (N.D. Cal. Jan. 18, 2008), and the validity of its copyrights, *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991); *Lamps Plus, Inc. v. Seattle Lighting Fixture Co.,* 345 F.3d 1140, 1145 (9th Cir. 2003); *Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1217 (9th Cir. 1997).  There simply is no excuse for its having ignored the August 2016 deadline to serve affirmative expert reports and instead trying to sneak in such evidence under the guise of a rebuttal.  Most of Mr. Sedlik's report is simply not rebuttal and is not admissible.

### A. Mr. Sedlik's Analysis of Copyrightability Is Irrelevant and Dishonest

In opposing KAYAK's motion, Evox admits that Mr. Sedlik's discussion of copyrightability is simply copied verbatim from a report he prepared in a separate case involving different photographs, *Evox Productions LLC v. California Rent-A-Car*. (Moskin Dec. Exs. 2, 3.)  Evox concedes, as it must, that Mr. Sedlik could not even remember at his deposition what photographs were at issue in the *California Rent-A-Car* litigation. (Tr. 33:24-34:15.)  Evox also concedes that Mr. Sedlik was simply dishonest under oath that where he used the term photograph with a capital "P" he (generally) meant to refer to the photographs actually at issue.  (Sedlik Tr. 216:23-217:5.)  In fact, excluding his introduction (§I) the word "Photograph(s)" is capitalized only 5 places in the analysis sections the report, Sections J – X (p. 31 §K; p. 32 §L; p. 40 §V, 43 §X.[1])  However, the falsity of this testimony is shown by the fact that he used the same capitalization pattern in the report he prepared for Evox's litigation against California

---

[1] On p. 38 § P, he does add one new sentence that there are no props in the "Photographs" at issue in this case.  That one sentence does not appear in his California Rent-A-Car opinion.

Rent-A-Car (Moskin Decl. Ex. 2: p. 5 ¶ 6; p. 6 ¶ 18; p. 6 ¶1 9; p. 15 ¶ 44 and p. 16 ¶45), involving entirely different photos. This is not simply a "gotcha" moment; it is outright dishonesty.

Evox itself now tries to cover for Mr. Sedlik's dishonesty by asserting (Brf p. 18) that eight of the photographs at issue in *California-Rent-A-Car* are also at issue here. This assertion is itself false! Attached to the Supp. Moskin Declaration as Ex. 4 are the 8 photographs Evox's identifies. Comparing these with the photographs at issue here (Id. Ex. 5) shows they are obviously different. They all show a half-grey background absent from the photos at issue here; 7 of the 8 show the front wheel turned (meaning they are not even part of the "spin" process used for all of the photos KAYAK licensed from Evox, all of which have the wheel pointed straight ahead), and they are all photographs from a distinctly higher angle than the photos at issue (as is apparent from the fact that the photos licensed to KAYAK all show light under the vehicle whereas the higher angle of the 8 photos from California-Rent-A-Car show no daylight underneath). It does not even appear that they are taken from the same 45 degree angle off the front bumper.

Moreover, given that Mr. Sedlik's report for *California Rent-A-Car* was prepared in April 2016, it would be impossible for the analysis to be responsive to Mr. Elsner's August 2016 report. Likewise, because Mr. Elsner's analysis focused exclusively on the five photographs Evox identified in discovery as potentially containing creative expression, Mr. Sedlik's failure to consider any of the five logically precludes any possible responsiveness.[2] As noted at length in KAYAK's opening brief, Mr. Sedlik of course discusses none of Mr. Elsner's substantive discussion of the five photographs or the nine allegedly original elements of expression in the photographs. (Moreover, if KAYAK is correct that Evox is not permitted to offer any trial testimony about any

---

[2] Although Evox is correct that Mr. Sedlik's report says he reviewed the complaint, which included all of the photographs, what it fails to address is that Mr. Sedlik's report identify no creative expression in any of those actual Evox photographs and nowhere identifies in his report any of the specific Evox photos (if any) that he purports even to have reviewed. He certainly nowhere mentions any expression in any such photographs that might support a finding of copyrightability.

images other than the five, Mr. Sedlik cannot be permitted to testify for this additional reason.)

Evox does cite to the one page of Mr. Sedlik's report (p. 41) that was not copied from his *California Rent-A-Car* opinion, but apart from containing pure legal argument based on Mr. Sedlik's quote from Nimmer on Copyright as the legal standard of copyrightability (for which Mr. Sedlik is not competent to testify), this page only sets forth a bare legal conclusion that there is something original (he does not say what) in Evox's choice of "optimal" lighting, camera angle and other general elements of its assembly-line process.  His bare *ipse dixit* conclusion that there is something original in one of those choices in no way responds to Mr. Elsner's actual detailed analysis (based on the admissions of Evox's designated witnesses at deposition) that each of these decisions was adopted without originality or creativity from the prior art or was selected based on experimentation for functional reasons to "optimize" or expedite Evox's assembly line approach.  Certainly, he cannot be permitted to testify to summarily contradict the factual admissions by Evox's own witnesses that everything it identified in its photographs as being original was adopted from the prior art or is functional (or both).

As Evox has done in every instance when KAYAK has confronted it with its own admissions that it cannot identify anything original or non-functional in the photographs actually at issue in this case, it simply changes the subject to the sweeping generalization that most photographs are copyrightable.  "Most," of course" is not all, and if the Court chooses to instruct the jury that some such standard is the law, there will be no need for Mr. Sedlik to repeat the point when it is clear he has not taken the time to analyze the photographs in issue and simply lied under oath.  It likewise accuses KAYAK of somehow misstating the law but identifies no legal error by KAYAK and says that KAYAK is applying the wrong standard of novelty rather than originality.  But such broad labels are not a substitute for analysis, and neither Evox nor its claimed expert witness have ever actually analyzed the facts as unambiguously shown by the record.

Allowing Mr. Sedlik to testify can only serve to confuse the jury. Nor is his report on copyrightability proper rebuttal.

### B. Mr. Sedlik's Contract Analysis Is Irrelevant and Misleading

Although Evox concedes that Mr. Sedlik's report is intended only as rebuttal, it focuses primarily on Mr. Sedlik's arguments that KAYAK supposedly acknowledged in the agreement that Evox owns copyright in its images. KAYAK vigorously disputes this, but there can be no question that this is an issue never addressed in the report of Mr. Elsner. Evox itself is entirely free to have its witnesses explain what they understand the contract terms to mean, but it can only confuse the jury to have a non-lawyer with no expertise in contract interpretation (and who sets forth no guiding principles of contract interpretation) offer his views of the meaning of the contract[3] – particularly when it does not actually rebut anything KAYAK's expert said.

Mr. Elsner did not opine on whether KAYAK was able to read the Agreement before signing it (Evox Brf p. 4); or whether KAYAK understood the difference between a website and or URL and a mobile app (Id). Mr. Sedlik's statements are not rebuttal; they are just legal advocacy from a non-lawyer. In fact, the distinction between a website and a mobile app is not only absent from Mr. Elsner's report, it nothing whatsoever to do with KAYAK's contract defense, which is not that it did not understand the difference among these terms but that it affirmatively understood the term "portal website" to be broad enough to include KAYAK's actual business.[4] To allow Mr. Sedlik to testify about such irrelevant red herrings can only confuse the jury. Nor did Mr. Elsner purport to

---

[3] *White v. Ford Motor Co.*, 312 F.3d 998, 1008-09 (9th Cir. 2002) ("A layman, which is what an expert witness is when testifying outside his area of expertise, ought not to be anointed with ersatz authority as a court-approved expert witness for what is essentially a lay opinion."); *Apple, Inc. v. Samsung Elecs. Co.*, 2013 U.S. Dist. LEXIS 160188, *42 (N.D. Cal. Nov. 6, 2013) ("Under Federal Rule of Evidence 702, experts may not make expert conclusions about areas outside their expertise."); *Stop Staring! Designs v. Tatyana, LLC*, 2012 U.S. Dist. LEXIS 192949, *2 (C.D. Cal. Feb. 21, 2012) (vacating jury verdict and granting new trial where expert had been allowed to testify outside his expertise).

[4] Contrary to Evox's argument, it also is not KAYAK's position that it was permitted to use the images on its mobile app merely because the Agreement did not expressly exclude mobile apps.

address the bare tautology that conduct outside the scope permitted by an agreement is not permitted by the agreement or whether such terms are or are not routinely included in license agreements.  (Id. p. 4.)  Again, Mr. Sedlik's report is mere lawyerly argument dressed up as expert opinion

As possible rebuttal, it is true that Mr. Elsner's report notes that the term "portal website" is not standard in licensing stock photos (consistent with Evox's own fact witnesses), but nothing in Mr. Sedlik's report serves to rebut this conclusion – other than Mr. Sedlik's ipse dixit denial.  More important, Mr. Sedlik's conclusory statement is not only supported by no evidence but contradicts Evox's own fact witnesses.  Evox is free to have its fact witnesses offer their own honest testimony what they understood the contract to mean, but they are not free to have a non-lawyer with no expertise in contract interpretation offer opinions divorced from any principles of contract interpretation about either KAYAK's supposed understanding of the agreement (particularly when KAYAK does not endorse the views he ascribes to it) or about Evox's understanding what the contract means, especially given that he contradict the testimony of Evox's own designated witness on contract interpretation who admitted that the term "portal website" was adopted by Evox for idiosyncratic reasons having nothing to do with any possible general understanding in the industry.  (Thompson Tr. 60:21-61:18.)  It is used subjectively to distinguish those companies doing business on the internet that Evox contends are "portals" (such as Edmunds.com or Kelly Blue Book) from those that, for unknown reasons, it thinks are not (such as Amazon.com or Craigslist).  (Id. 48:13-22.)  Evox thus further admits the term is used primarily to distinguish agreements priced on the overall volume of viewership of a library of images from other financial models, such as Dealer Value Added Reseller ("DVAR"), rather than a term having some inherent meaning. (Id. 31:18-32:21, 63:10-16.)  Evox's founder, David Falstrup (who signed the Agreement for Evox), likewise does not know the derivation of the term "portal." (Falstrup Tr. 33:1-35:1.)  (See generally, KAYAK Statement of Facts for Summary Judgment (ECF 60-2) ¶¶ 28-32.)    Mr. Sedlik cannot possibly know better than Evox

what Evox meant and he identifies no basis to believe he knows anything whatsoever how this or any other term might be used in the stock photography industry.

Mr. Sedlik does cite his own dictionary (written in 2006 before the creation of mobile apps in 2008) that includes a definition of "portal," but it is undisputed that neither KAYAK nor Evox consulted this dictionary when they entered the agreement, and as noted, Evox derived the term "portal website" for entirely different internal reasons. His own report is internally inconsistent because he says both that "portal" has no meaning in the parties agreement yet nonetheless offers a definition of the term.[5] In his unguided advocacy (divorced from any legal principles of contract interpretation) Mr. Sedlik never addresses the common meaning of "portal" as a gateway or opening and cites no definition of "portal website."  Nor does he cite a single example how even the definition "portal" has ever been used in licensing (much less any reason to believe either Evox or KAYAK ever heard of or relied on his dictionary or this definition). To the contrary, Mr. Sedlik's report is plainly unreliable because he did not even consider the admission of Evox's designated witness that he did not know the origin of the term "portal website," but that it was idiosyncratic to Evox. Evox concedes that Mr. Sedlik cites no license agreement using this phrase and that Mr. Sedlik did not purport to analyze any of Evox's own numerous "portal website" agreements licensing photos for use on mobile apps. Instead, he simply cites on-line adhesion contracts that do not use the term (but instead provide drop-down menus listing the desired uses – including specifically mobile apps).

KAYAK has no objection to Evox fact witnesses discussing elements of the Agreement such as the fact that it includes a representation by Evox that its images are copyrightable. However, there is nothing in Mr. Sedlik's analysis that sheds any light on

---

[5] Evox is free to have its fact witnesses testify that "portal website" means "website website" as Mr. Sedlik testified (Sedlik Tr. 98:22-102:24), but Mr. Sedlik's admission that that's what he thinks the contract means simply demonstrates his lack of qualifications as a non-lawyer to interpret the agreement under unknown and unstated principles of contract construction.

this term. To the contrary, because his testimony is so plainly biased, he refuses to acknowledge that there was no acknowledgement by KAYAK that it agreed the images were copyrightable and no agreement by KAYAK not to challenge copyrightability. Instead, Mr. Sedlik, who is not a lawyer and cites no guiding principles of contract interpretation mistakenly argues that KAYAK's agreement not to use the images somehow precludes it as a matter of law from challenging copyrightability now. KAYAK has no interest in using the subject images, but Mr. Sedlik should not be permitted to argue issues of contract interpretation to the jury.

### C. KAYAK's Criticisms of Mr. Sedlik's Report and Testimony Are Correct

Evox falsely accuses KAYAK's counsel of raising his voice when Mr. Sedlik refused to answer questions for page upon page of his transcript, ignoring that the record itself includes KAYAK's counsel contemporaneous denial of the false accusation on the record when it was made and notation that it was Mr. Sedlik who was acting inappropriately. (Evox Brf p. 7.) Evox further takes umbrage at the fact that KAYAK's counsel noted on the record that Mr. Sedlik *testimony* in which he refused to answer simple questions were improper and often absurd. As the record makes clear, counsel never made any personal accusations at Mr. Sedlik; only the absurdity of his refusal for page after page to answer questions how he could purport to know better than KAYAK itself what it intended in entering the Agreement or what are its contentions in this action.

Evox also mischaracterizes and does not respond to KAYAK's actual argument that Mr. Sedlik's refused for page after page to concede that, at the very least, KAYAK (even if only subjectively) knows better than does he what KAYAK itself understood, what KAYAK itself intended and what KAYAK itself actually did in paying for its very public use of the subject photos. (Sedlik Tr. 150:14-162:25.) KAYAK acknowledged the one passage cited by Evox where Mr. Sedlik later denied that that was the meaning of his testimony, but it cannot deny that the substance of his testimony was that he knows better than KAYAK itself what it intended; he refused even to consider the possibility

Case 2:15-cv-05053-PSG-AGR   Document 144   Filed 01/20/17   Page 10 of 11   Page ID
#:12856

that the parties simply misunderstood one another; instead, suggesting either that KAYAK was trying to defraud Evox (hence making him the only one making personal accusations) or that its employee who negotiated the deal was incompetent. (Tr. 170:14-189:19.)  Nor does Evox attempt to explain why Mr. Sedlik *never even addressed in his report* the key facts demonstrating the absurdity of his position; namely that KAYAK never would ever have entered such a tiny contract for photos it could have gotten elsewhere without disabling or partly disabling its mobile app, and that KAYAK in fact paid for all such usage during the like of the contract.  (Indeed, further showing his bias, he refused to answer whether he had any factual basis to challenge even KAYAK's *contention* that it paid for all uses of the photos on its mobile app as well as its website. (Tr. 49-62.))  The fact that Mr. Sedlik failed even to attempt to address these issues, and Evox's failure now to explain these failures other than by mischaracterizing KAYAK's arguments, confirm Mr. Sedlik's lack of credibility.

Likewise, Evox fails to address why Mr. Sedlik, for no apparent reason, refused even to credit the possibility that KAYAK just wanted convenient access to a reasonably large library of consistent images (with the cars facing in one direction), as actually testified to by the employees who negotiated the deal, insisting instead by some *a priori* assumptions that the contract terms had to be interpreted to mean KAYAK conceded the validity of the copyrights.  By the same reasoning, he also insisted that everyone who goes to public libraries wants to know if the books are copyright-protected. (Sedlik Tr. 131:7-140:17.)   Mr. Sedlik's nonsensical insistence that he is able to construe the contract and KAYAK's intent on unknown grounds, divorced from the facts or from any known rules of contract construction, makes his views inadmissible under *Daubert*.  As noted in regard to Mr Sedlik's discussion of copyrightability, Evox itself in opposing KAYAK's motion makes no effort to defend KAYAK's demonstration that Mr. Sedlik was dishonest under oath.

Mr. Sedlik's report is simply baseless argument by a non-attorney unqualified to construe a contract and can only confuse the jury.  Evox's fact witnesses are entitled to

KAYAK'S REPLY FOR MTN TO EXCLUDE SEDLIK TESTIMONY
-9-
Case No. CV15-05053-PSG-AGR

4823-3108-4608.2

testify to their own understanding of the contract terms, but allowing Mr. Sedlik to testify would be no different from allowing one of its hired counsel to testify – except that he is not even a lawyer.

### III. CONCLUSION

For the foregoing reasons, KAYAK respectfully requests that the Court preclude Mr. Sedlik from testifying in this action.

DATED: January 20, 2017    **FOLEY & LARDNER LLP**

By: /s/ Jonathan E. Moskin
    Jonathan E. Moskin
    Jean-Paul Ciardullo

Attorneys for Defendant/Counterclaimant
KAYAK SOFTWARE CORPORATION